## SCHMIDT, PLAINTIFF IN ERROR, v. THE PEOPLE, DEFENDANTS IN ERROR.

STATUTE UNCONSTITUTIONAL.

The act of March 21, 1889, concerning the inspection before slaughter of certain animals, intended for human food, is in violation of the Constitution of the United States in so far as such act provides that fresh meats, sound, healthy, and fit for human food, cannot lawfully be shipped into this state to be sold except upon condition that the animal or animals from which such meats have been taken shall have been inspected and certified as provided by said statute. This decision is based upon a decision by the supreme court of the United States.

*Error to the Criminal Court of Arapahoe County.*

INDICTMENT for violation of the statute concerning the sale, and offer for sale, of certain fresh meats without having the same inspected. Julius F. Schmidt, the defendant below, having been convicted and sentenced under said statute, brings the cause to this court by writ of error.

Messrs. TELLER and ORAHOOD and Mr. GEO. W. McCRARY, for plaintiff in error.

Mr. SAM. W. JONES, attorney general, and Mr. HUGH BUTLER, for defendants in error.

PER CURIAM. There is no controversy as to the facts of this case. Plaintiff in error was indicted and convicted in the criminal court of Arapahoe county for the violation of a certain act of the general assembly of the state of Colorado, entitled, "An Act to provide for the inspection, before slaughter, of certain animals, the meat of which is intended to be sold, or offered for sale, as human food, and to prescribe penalties for the violations of the provisions of this act." See Session Laws, 1889, p. 244.

The provisions of said act necessary to an understanding of the case are as follows:

" Section 1. No person shall sell or offer for sale as an article of human food within this state, except as provided in Section 9 hereof, the fresh meat of any neat cattle, swine or sheep of any description, unless the animal has been inspected and accepted in the manner hereinafter provided.

" Sec. 2. That the county commissioners of the several counties of this state shall, on or before the first day of August, 1889, and on or before the first day of August of each year thereafter, appoint one or more meat inspectors in each village, town and city thereof, (and elsewhere in their respective counties, if deemed necessary,) who shall be known and designated as live stock meat inspectors, and who shall hold their respective offices for the period of one year, and until their successors are appointed and qualified. * * *

" Sec. 3. That it shall be the duty of an inspector to view and inspect every head of cattle, sheep and swine to be slaughtered within the limits of the village, town, city or county wherein he has been appointed, and to be offered for sale as human food within the limits of the state of Colorado, within forty-eight hours before said slaughtering; and if found healthy, sound, free from taint of disease, and in good condition, to certify the same to the owner or holder thereof, giving the date and hour of inspection, the number, marks, brands and such other particulars of the animal or animals as he may deem necessary, retaining a copy of such certificate, in a book kept by himself for the purpose, etc. * * *

" Sec. 8. Any person who shall sell or offer for sale as human food, the flesh of any animal belonging to any of the classes mentioned in this act, which animal has not been inspected within this state before killing, as hereinbefore provided, and certified to be sound, free from disease, and in good condition, shall, for each offence, upon conviction, be punished by a fine not less than fifty dollars nor more than one hundred dollars.

" Sec. 9. Nothing in this act shall apply to or in any manner affect neighborhood slaughtering and sales in rural districts."

At the trial in the criminal court it was made to appear as a fact that the animal or animals, to wit, certain neat cattle, the meat of which was offered for sale by defendant in the city of Denver, Colorado, and for the offering of which he stood indicted, had not been inspected and certified to be sound and free from disease as provided by the foregoing statute. It was also established as a fact at said trial that said meat was not from any animal slaughtered in the city of Denver, or anywhere in the state of Colorado, but was from an animal slaughtered without the state of Colorado, the meat of which was shipped from Kansas City, state of Missouri, to defendant by the Armour Packing Company of that city, to be offered by defendant for sale in the city of Denver, county of Arapahoe and state of Colorado, and that defendant offered the same for sale in said city, county and state, the same not having been inspected and certified as aforesaid.

It is assigned for error that the statute under which defendant was indicted and convicted is " contrary to and in violation of the Constitution of the United States."

Since the trial of this cause in the criminal courts, several cases have arisen under statutes of other states substantially like the statute above quoted. In the cases thus arising the decisions of the courts have been to the effect that such acts of state legislatures are unconstitutional in so far as they provide that fresh meats, sound, healthy, and fit for human food, cannot lawfully be shipped from one state to be sold in another state except upon the condition that the animal or animals from which such meats are taken shall have been inspected and certified in the latter state within the prescribed statutory period prior to the time of slaughtering. *Swift v. Sutphin*, 39 Fed. Rep. 630; *In re Barber*, 39 Fed. Rep. 641; *State v. Klein*, 126 Ind. 68; *Hoffman v. Harvey*, 128 Ind. 600; *Minnesota v. Barber*, 136 U. S. 313.

It must be conceded that fresh meats from animals slaughtered in Kansas city or anywhere east of the Missouri river cannot be shipped and sold in any of the towns or cities of

Colorado, without incurring the penalties prescribed by the act of 1889, *supra*. It would be impracticable, if not impossible, to have the animals examined and certified *in this state* within forty-eight hours previous to the slaughtering of said animals east of the Missouri river.

The decisions cited above are placed upon the ground that the necessary effect of such state legislation is to interfere with and burden commerce between the states as to certain articles proper to be transported and sold for human food; that such legislation, if upheld, would, in effect, discriminate in favor of the products of the state wherein such legislation exists and against the products of other states.

The Minnesota-Barber case was decided by the supreme court of the United states. The opinion declares statutes like the one under consideration in this case unconstitutional to the extent above stated. In addition to such declarations, the syllabus of the case contains the following:

" In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect; and the presumption that it was enacted in good faith, for the purpose expressed in the title, cannot control the determination of the question whether it is, or is not, repugnant to the Constitution of the United States. * * *

" A law providing for the inspection of animals, whose meats are designed for human food, cannot be regarded as a rightful exertion of the police power of the state, if the inspection prescribed is of such a character, or is burdened with such conditions, as will prevent the introduction into the state of sound meats, the product of animals slaughtered in other states.

" A burden imposed upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all the states, including the people of the state enacting it."

It is unnecessary for this court to express its views upon the question presented in this cause. It having been determined by the supreme court of the United States that the

question is one of Federal cognizance, the decision of that court is of paramount authority, and must be accepted as controlling in this particular class of cases.

The judgment of the criminal court must be reversed and the cause remanded with directions to dismiss the proceeding and discharge the defendant.

*Reversed.*