(December 18, 1897.)

## STATE v. DUCKWORTH.

### [51 Pac. 456.]

CONSTITUTIONAL LAW—COMMERCE AMONG THE STATES.—The nonexercise by the Congress of its power to regulate commerce among the states is equivalent to a declaration by that body that such commerce shall be free from any restrictions.

POLICE REGULATIONS—BURDENS AND RESTRICTIONS ON INTERSTATE COMMERCE.—Section 14 of an act of the legislature concerning the appointment of a sheep inspector, etc. (see Sess. Laws 1895, p. 125), and sections 4 and 6 of an act amendatory thereof (see Sess. Laws 1897, p. 115), declaring it to be unlawful to bring sheep into this state without first having them "dipped," as provided in said acts, place an unnecessary burden and restriction upon interstate commerce and are repugnant to the commerce clause of the federal constitution.

INSPECTION OF SHEEP—STATUTE REPUGNANT TO SECTION 2, ARTICLE 4, OF UNITED STATES CONSTITUTION.—Said sections also discriminate to such an extent against persons who may desire to bring sheep into the state, and those who may have sheep within the state, as to be clearly repugnant to the provisions of section 2, article 4, of the federal constitution.

(Syllabus by the court.)

APPEAL from District Court, Oneida County.

George E. Gray and F. S. Dietrich, for Appellant.

This is a criminal action in which the defendant is charged by the district attorney's information with bringing sheep into Idaho without first having complied with the provisions of what is commonly known as the "Scab Law," passed at the fourth session of the Idaho legislature, and approved March 12, 1897. (See Sess. Laws, 1897, p. 115.) If the "Scab Law" defines the acts complained of as a penal offense, then the provisions of the law are repugnant to the constitution of the United States. Respondent may say the general language of the act and of the section by implication defines as a crime such acts as are complained of. But criminal statutes are construed most strictly against the state; nothing is implied. (Sutherland's Statutory Construction, pars. 208, 347; Clark's Criminal Law, p. 28.) The plain language of the law is meaningless, or the influences which brought forth this legislation were more ingenious than ingenuous. The requirement is clearly repugnant to the constitution. (Cooley's Constitutional Limitations, 5th ed., p. 21 and note, pp. 490-492 and notes; *Ward v. Maryland,* 12 Wall. 418; *Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. Rep. 862; *In re Watson,* 15 Fed. 511, and note.) For expressions, mainly of the court of last resort, upon the questions involved in this cause, we cite for special consideration the following decisions: *Gibbons v. Ogden,* 9 Wheat. 1; *Henderson v. Wickham,* 92 U. S. 259; *Welton v. Missouri,* 91 U. S. 275; *Railroad v. Husen,* 95 U. S. 465; *Brown v. Houston,* 114 U. S. 622, 5 Sup. Ct. Rep. 1091; *Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. Rep. 862; *Brimmer v. Rebman,* 138 U. S. 78, 10 Sup. Ct. Rep. 213; *Voight v. Wright,* 141 U. S. 62, 11 Sup. Ct. Rep. 855; *Schmidt v. People,* 18 Colo. 78, 31 Pac. 498; *Farris v. Henderson,* 1 Okla. 384, 33 Pac. 380, 382. A statute may, upon its face, apply equally to the people of all the states, and yet be a regulation of interstate commerce which a state may not establish. A burden imposed by a state upon interstate commerce is not to be sustained simply because the statute imposing it applied alike to the people of all states, including the people of the state enacting such statute. (*Robbins v. Shelby Co. Taxing Dist.,* 120 U. S. 489, 497, 7 Sup. Ct. Rep. 592; *State Freight Tax Case,* 15 Wall. 232 (146).)

Attorney General McFarland, for the State.

The state legislature is the sole judge as to the expediency of making police regulations interfering with the rights of persons and property when such regulations are not prohibited by the constitution. (*Varick v. Smith*, 5 Paige, 136; Cooley's Constitutional Limitations, 704-707; Potter's Dwarris on Statutes, 455.) The law in question is what is commonly known as a quarantine, sanitary or inspection law, and comes under what is termed the police power of the state. (Potter's Dwarris on Statutes, 444; *Mayor of New York v. Lord*, 17 Wend. 285; *Mayor etc. v. Miln*, 11 Pet. 102; 2 Kent's Commentaries, 338; *Russell v. Mayor of New York*, 2 Denio, 461; Cooley's Constitutional Limitations, 706.) It has been held that state laws establishing quarantine and health laws of every description, even to the extent of destroying private property when infected with disease or otherwise dangerous, fall within the proper bounds of state police. (Cooley's Constitutional Limitations, 706; *Gibbons v. Ogden*, 9 Wheat. 1; *Cisco v. Roberts*, 36 N. Y. 292; *Benedict v. Vanderbilt*, 25 How. Pr. 209; *Vanderbilt v. Adams*, 7 Cow. 348; *Cooley v. Board of Wardens*, 12 How. 299; *Owners "James Gray" v. Owners "John Frazer,"* 21 How. 184; *Wilson v. McNamee*, 102 U. S. 572; *Gilman v. Philadelphia*, 3 Wall. 713-731.) In support of the law in question, we cite the court to the following cases: *Kimmish v. Ball*, 129 U. S. 217, 9 Sup. Ct. Rep. 277; *Smith v. Alabama*, 124 U. S. 465, 8 Sup. Ct. Rep. 564; *Morgan's Steamship Co. v. Louisiana Board of Health*, 118 U. S. 455, 6 Sup. Ct. Rep. 1114; *Nashville etc. Ry. Co. v. Alabama*, 128 U. S. 96, 9 Sup. Ct. Rep. 28; *Patterson v. Kentucky*, 97 U. S. 501; *Pembina Consolidated etc. Milling Co. v. Pennsylvania*, 125 U. S. 181, 8 Sup. Ct. Rep. 737; *Ex parte Maier*, 103 Cal. 476, 42 Am. St. Rep. 129, 37 Pac. 402; *Slaughter-House Cases*, 16 Wall. 36; *Paul v. Virginia*, 8 Wall. 168.

SULLIVAN, C. J.—The appellant, who was the defendant in the court below, was convicted of the crime of bringing sheep into the state without having first obtained the certificate or permit of the deputy sheep inspector. He waived a jury trial, and the case was submitted to the court on a written stipula-

tion of facts. The defendant was found guilty, and sentenced to pay a fine of $100, and five cents per head on 3,000 head of sheep, from which judgment this appeal was taken.

The appellant contends that said judgment is erroneous, because the act of the state legislature under which he was convicted is repugnant to certain provisions of the federal constitution: (1) To paragraph 1, section 2, article 4, which provides that citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states; and (2) to that provision of section 8, article 1, which authorizes the Congress to regulate commerce. The defendant was convicted under the fourth section of an act entitled "An act to amend sections 2, 3, 5, 6, 7, 8, 11 and 12 of an act to create the office of sheep inspector for the state of Idaho; to provide for the appointment and to define the powers and duties of said officer and his deputies, and fixing his salary and the compen-. sation of his deputies and providing for the prosecution of offenses in said act," approved March 12, 1897 (see Sess. Laws 1897, p. 115), which act is commonly called the "Scab Law." Said fourth section is as follows: "That section 6 of said act is hereby amended to read as follows: Section 6. Any person, persons, company, corporation or association, intending to bring, or cause to be brought from any other state or territory into any of the counties of the state of Idaho, any sheep, he or they must first notify the deputy sheep inspector of the district or county nearest to the point of entrance into this state, that at a fixed date he will be within twenty miles from the state line at a designated point, with said sheep for inspection; and it shall be the duty of the deputy sheep inspector to examine such sheep within three days, and if pronounced sound, to immediately dip such sheep once, and then, upon being tendered his compensation as hereinafter provided, issue a permit allowing such sheep to enter this state subject to such regulations as are enforced on resident sheep. But if such sheep are found scabby or infected with any contagious or infectious disease, then the deputy sheep inspector must dip said sheep twice, with an interval from eight to fifteen days between dipping, and then issue a permit for said sheep to enter said state under the same regulations as heretofore provided; provided, how-

ever, that all sheep must enter said state within three days from final dipping, otherwise permit so issued shall be null and void. And any person or persons violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction, they shall be punished by a fine of not less than one hundred ($100) dollars, or more than three hundred ($300) dollars, or by imprisonment in the county jail, not less than two months, nor more than six months, or by both such fines and imprisonment; provided, that any person, persons, company, corporation or association bringing or causing to be brought any sheep into any counties of this state in violation of the provisions of this act, shall be fined in addition to the penalty imposed in this section, five cents per head, for every sheep, so brought into this state, which shall be a lien on said sheep; and it shall be the duty of the deputy sheep inspector to seize and hold such sheep by such means as he deems best, for a period of ten days, and if said sum is not paid within that period, to advertise and sell said sheep, or as many of the same as may be necessary to satisfy and pay such fine and costs." Said section makes it a misdemeanor for any person to bring any sheep into this state without having them first dipped by the sheep inspector. Section 6 of said act provides "that no person, persons, company or corporation within the state of Idaho shall be required to dip his or their bands of sheep between the first day of December and until such time as he or they can shear such sheep in the following spring," while any person who brings sheep into this state between the first day of December and such time in the spring as such sheep can be sheared must have them dipped before bringing them in, whether the sheep are sound and healthy or not. And it is further provided in said section that: "No person, persons, company or corporation within the state of Idaho shall be required to dip a band or bands of ewes, or any part of them in which there are ewes with lambs, at any time between the fifteenth day of March and the fifteenth day of May following of any year; but they must be held in quarantine and kept separate from sound sheep, and the owner, owners or controller shall be responsible for all damages as stated in this act, to be enforced and recovered as therein pro-

vided for." And it is also provided that sheep held in quarantine, which show any scab or contagious disease, shall be "spot or hand dressed" with some reliable medicine. The provisions of that section make a clear discrimination between sheep in Idaho and those that may be brought in between the dates designated. The alleged offense for which the defendant was convicted was for bringing sound and healthy sheep into the state without first having them "dipped" as directed by the provisions of said section 4.

It is contended that said act, and the act of which it is amendatory, are police regulations enacted for the purpose of the suppression and prevention of disease among sheep. The legislature, no doubt, had authority to enact laws for such purpose; but, in so doing, it must not come in conflict with the provisions of the constitution of the United States. Section 2, article 4 of the constitution of the United States, is as follows: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." And section 8, article 1, provides, among other things, that the Congress shall have power "to regulate commerce with foreign nations and among the several states and with Indian tribes." Numerous cases involving the construction of statutes similar to the one under consideration have been passed upon by the supreme court of the United States. All decisions from that court give to the commercial clause of the federal constitution a most liberal and salutary construction. And all statutes passed professedly as police regulations have not been tested by the innocent titles they may have, but by their natural and probable effect upon interstate commerce; and, if found in any manner to harass or burden such commerce, they have been invariably declared void. The leading case in construing the commerce clause of the federal constitution is that of *Gibbons v. Ogden,* 9 Wheat. 1. The construction given that provision by the great Chief Justice Marshall in that decision has not been questioned or doubted. It has been cited and approved in many cases. (See *Henderson v. Mayor of New York,* 92 U. S. 259; *Welton v. Missouri,* 91 U. S. 275; *Railroad v. Husen,* 95 U. S. 465; *Brown v. Houston,* 114 U. S. 622, 5 Sup. Ct. Rep. 1091; *Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. Rep.

862; *Brimmer v. Rebman,* 138 U. S. 78, 11 Sup. Ct. Rep. 213; *Voight v. Wright,* 141 U. S. 62, 11 Sup. Ct. Rep. 855; *Schmidt v. People,* 18 Colo. 78, 31 Pac. 498; *Farris v. Henderson,* 1 Okla. 384, 33 Pac. 380; *State Freight Tax Case,* 15 Wall. 232; *Robbins v. Taxing Dist.,* 120 U. S. 489, 7 Sup. Ct. Rep. 592.) Mr. Justice Johnson, in a concurring opinion in *Gibbons v. Ogden, supra,* said, "If there was any one object riding over every other, in the adoption of the constitution, it was to keep the commercial intercourse among the states free from all invidious and partial restraints." As defined in that opinion, the term "commerce" means, not only traffic, but also intercourse. When applied to states, it means commercial intercourse, as between them. It has been held that the nonexercise by Congress of its power to regulate commerce among the states is equivalent to a declaration by that body that such commerce shall be free from any restriction. (*Welton v. Missouri,* 91 U. S. 275.)

Applying the rule laid down in the foregoing authorities to the fourteenth section of the act providing for the appointment of a sheep inspector (see Sess. Laws 1895, p. 124), and the fourth and sixth sections of the act amendatory thereof (see Sess. Laws 1897, p. 115), and the facts of this case, it is made clearly to appear that said sections place unnecessary burdens and restrictions upon owners of sheep who desire to bring them into the state, as well as upon transportation companies, and greatly interfere with interstate commerce in the matter of the transportation and sale of sheep, and are therefore repugnant to the commercial clause of the federal constitution, and void. Said section 4 requires any person, company, or corporation intending to bring sheep into the state to notify the deputy sheep inspector that at a fixed date he will have his sheep within twenty miles from the state line, at a designated point; and it then is made the duty of said inspector to examine such sheep within three days after such notification, and, if such sheep are found to be sound and healthy, to immediately dip them; and then, upon tender of his compensation, he shall issue a permit allowing such sheep to enter the state. But in case such sheep are found scabby, or infected with a contagious or infectious disease, then such inspector must dip them

twice, with an interval of from eight to fifteen days between dipping, and then issue a permit. And it is provided that sheep must enter the state within three days from the final dipping, otherwise the permit shall be null and void; and for a violation of said law a penalty of fine or imprisonment, or both, are provided; and a further fine of five cents per head on all sheep brought into this state contrary to, or in violation of, said provisions, is imposed, and made a lien on the sheep. Said act assumes extraterritorial jurisdiction. It authorizes the deputy inspector to proceed into an adjoining state, and there inspect and dip sheep. The fourteenth section of the state sheep inspector law, approved March 9, 1895 (Sess. Laws 1895, p. 124), of which the act of 1897 is amendatory, is as follows: "It shall be unlawful for any person, persons, company, corporation or association, owning, controlling or managing any ferry-boat, toll-bridge, car, steamboat or other things used for transportation, to allow any sheep to be carried thereon, unless the party in charge of said sheep shall first produce a certificate from a deputy sheep inspector appointed under this act, that said sheep are free from scab, scabies and other infectious or contagious disease. Any violation of this section shall be deemed a misdemeanor.and punishable by a fine of not less than one hundred dollars nor more than two hundred and fifty dollars." Said section makes it a misdemeanor for any person, company, corporation or association owning, controlling or managing any ferry-boat, toll-bridge, car, steamboat, or other thing used for transportation, to allow any sheep to be carried thereon unless the party in charge of such sheep shall produce a certificate from a deputy sheep inspector. Any violation thereof is made a misdemeanor, and made punishable by fine. In order to procure a certificate or permit from a deputy sheep inspector under the provisions of the act of 1897, all healthy sheep must be dipped once; and said section 14 makes it a criminal offense for any transportation company to bring sheep into the state unless the person in charge of such sheep have a proper certificate from a deputy sheep inspector. Under the provisions of said acts, sheep cannot be shipped from Washington or Oregon, or from any other state, over the transportation lines in this state, without first unloading such sheep, and

having the proper deputy sheep inspector inspect and dip them. To illustrate: Supposing a trainload of sheep are being shipped from Oregon to Chicago over the Oregon Short Line Railroad; if said acts be valid the train must be stopped near the state line of Idaho, the sheep inspected, and, if healthy, dipped by a deputy sheep inspector once, and, if not free from disease, dipped twice. Thereafter, a proper certificate being given to the shipper of said sheep, the train may then proceed. Again, to illustrate: Supposing that Wyoming, Nebraska, Iowa, and Illinois had sheep inspector laws similar to those of Idaho, such sheep would have to be inspected and dipped before entering Wyoming, and again before entering Nebraska, and again before entering Iowa, and again before entering Illinois. It certainly does not require any argument to show that such acts would most seriously harass and burden interstate commerce, so far as the great sheep industry in the west is concerned. The statement of the proposition is sufficient to show to one familiar with the matter that it would not only take days, but weeks, to get a trainload of sheep which were free from disease from the state of Oregon to market in the city of Chicago, and at an expense which even the present prosperous condition of the sheep industry could not long withstand. And, again, said section 4 prohibits the bringing of sound, healthy sheep into the state, at any season of the year, unless they be first inspected and dipped; and the provisions of said section 6 recognize the fact that it is absolutely impracticable, and very dangerous to the lives of the sheep, to dip them during cold weather, or during the winter months. By requiring all sheep to be dipped before they can be brought into the state, a prohibition is thus set on bringing any sheep into the state during the winter months. The act thus unjustly discriminates against outside sheep, for it provides that sound sheep within the state need not be dipped, and diseased sheep need only be quarantined and "spot or hand dressed," while sound outside sheep can only be brought within the state after first being dipped, and diseased outside sheep must be dipped twice before they can be brought within the state. An unjust discrimination is made against bands of ewes that are out of the state, whose owners' desire to bring them into the state. Said act does not require

the dipping of the ewes that are in the state between the fifteenth day of March and the fifteenth day of May following, but it requires all ewes that are brought into the state between those dates to be dipped once if sound and healthy, and twice if infected with contagious disease. The danger of loss being so great, in dipping ewes between said dates, said act is a virtual prohibition on bringing bands of ewes into this state between the dates specified therein. Said act admits that sound sheep, by inspection, may be distinguished from infected ones; that the inspector can easily determine whether a band of sheep is sound or not. It is admitted that the disease known as "scab" breaks out in open sores within ten days after exposure. It is also conceded that said disease is as prevalent in Idaho as it is in the surrounding states, and that Idaho sheep are the same as those of other states, and that scab is as prevalent and natural among sheep in Idaho as it is among the sheep of our neighboring states. In other words, the sheep of our neighboring states are no more the natural habitat for scab, or other infectious diseases to which sheep are subject, than are Idaho sheep. Those facts distinguish the case at bar from those cases in which the constitutionality of laws aiming to protect the cattle of certain states from the ravages of the disease commonly known as "Texas fever" is involved. It is recognized that Texas cattle are the natural habitat for said disease, and if they are excluded from a state, as well as cattle that have come in contact with them, the disease is wholly prevented. It is thus shown that that class of cases is distinguishable from the case at bar. The enactment of a similar statute to the one under consideration, by the states of Wyoming, Nebraska, Iowa and Illinois would result in closing the markets of Kansas City, Omaha, and Chicago to the sheep growers of our state. The burden placed upon the shipper or driver of sheep would be very great, if, upon arriving at a state line, he must notify a sheep inspector, and, in case such inspector pronounce the sheep sound and healthy, they must be dipped once before entering such state. Under the guise of inspection and quarantine, said sections place unnecessary burdens and restrictions upon bringing sheep into this state for any purpose whatever, or transporting them through the state to the markets of the

east, and make unnecessary and prejudicial discriminations against sheep whose owners may desire to bring them into the state; and they are repugnant to the provisions of the federal constitution. Said sections are void for that reason, and the judgment of the lower court must be reversed, and it is so ordered. The case is remanded, with instructions to the court below to set aside said judgment, and to discharge the appellant and dismiss said action. Costs of this appeal are awarded to the appellant.

Huston and Quarles, JJ., concur.