The State v. Asbell.

THE STATE OF KANSAS V. B. F. ASBELL.*

No. 14,874.   (86 Pac. 457.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Violation of Live-stock Inspection Statute—Information.* An information drawn under section 27 of chapter 495, Laws of 1905, relating to the inspection by the live-stock sanitary commissioner of cattle imported from places beyond the south line of the state, which charges a want of inspection by the live-stock sanitary "commission," and charges generally the want of any inspection, is not invalidated by the omission of the terminal syllable "er" from the word used to describe the official having power to make the inspection.

2. CONSTITUTIONAL LAW—*Inspection of Live Stock—Regulation of Interstate Commerce.* The statute referred to is a reasonable inspection law necessary for the protection of the cattle of the state against the ravages of contagious and infectious diseases, and is not invalid as a regulation of interstate commerce.

Appeal from Labette district court; THOMAS J. FLANNELLY, judge. Opinion filed July 6, 1906. Affirmed.

*C. C. Coleman,* attorney-general, and *E. L. Burton,* county attorney, for The State.

*A. D. Neale,* for appellant.

The opinion of the court was delivered by

BURCH, J.: Appellant was convicted of a violation of the law relating to the inspection of cattle brought into the state from points beyond its south line. The information charged, among other things, that appellant brought cattle into the state from points south of its south boundary without having caused them to be inspected and passed under a certificate of health by the live-stock sanitary commission of the state, and that he did not have any inspection of them. This

* Pending in the supreme court of the United States on a writ of error allowed November 3, 1906.

pleading was attacked by a motion to quash and by a motion in arrest of judgment, on the ground that there is no longer any live-stock sanitary commission in this state, the body formerly existing under that name having been superseded by a live-stock sanitary commissioner, and that the general statement of a want of any inspection is insufficient.

There is no substantial difference between a commission composed of a body of individuals having lawful warrant to perform certain acts and a commissioner having identical authority. Both terms are general characterizations without fixed legal signification, and import an office with prescribed duties. It is therefore very technical to say that the omission of the terminal syllable "er" marks a fatal distinction between a single person having power by himself and his subordinates to inspect cattle and issue health certificates and all other men. Instead of this it merely discloses a slightly imperfect description of a well-known state official. Of course an information must state the offense charged with accuracy, precision and certainty; but it may do this in general terms. (*The State v. Finley,* 6 Kan. 366.) The question is, Could the accused have been misled? (*The State v. McCord,* 8 Kan. 232, 12 Am. Rep. 469.) Hence, if the defect noted were serious, the general negative of any inspection whatever fairly apprised appellant of the charge he was required to meet. Although this allegation was probably inserted for the purpose of showing a want of inspection by an inspector as distinguished from the commissioner, it is broad enough to cover all persons; and whenever a negative is to be expressed general terms covering the entire subject-matter will suffice. (1 Bishop's New Crim. Proc. § 641.)

The action was instituted under section 27 of chapter 495, Laws of 1905, which reads as follows:

"It shall be unlawful for any person or persons to bring, drive or transport any cattle into any county of the state of Kansas, except for immediate slaughter,

as provided in the preceding section, from any point south of the south line of Kansas, without having first caused such animal or animals to be inspected and passed under certificate of health by the live-stock sanitary commissioner of this state, or some inspector thereof, duly authorized by such commissioner, or by the bureau of animal industry of the interior department of the United States government; and any person or persons violating the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty nor more than one thousand dollars, or by imprisonment in the county jail not less than thirty days nor more than one year, or by both such fine and imprisonment."

It is said the law is void because it prohibits bringing cattle into the state from below its south line at all seasons of the year, and whether they are diseased or not, unless inspected, and that the stock-owner is placed at the mercy of the live-stock sanitary commissioner, who has power to admit or exclude cattle as he may see fit. It is true that all cattle coming from the south must be inspected at all seasons of the year, but capricious conduct on the part of the live-stock sanitary commissioner is not contemplated. He has no discretion. He merely ascertains facts. If incoming cattle are healthy, he passes them. If they are diseased, he turns them back. Inefficiency or abuse of power in the administration of quarantine laws cannot be presumed. Inspectors are to be credited with proper capacity and proper motives until a case to the contrary is presented. Such an instance, if one should arise, would disclose conduct outside the purview of the offending individual's legal authority and could not be charged to the law itself. All human laws must be executed by fallible men, but such laws are not on that account unrighteous.

The only question, then, is if the statute imposes an unreasonable restriction upon interstate commerce, the territory lying south of the south line of Kansas from which cattle may be brought into the state virtually

being treated as an infected district. The prevalence of *Boophilus bovis,* or Southern ticks, in the cattle country south of Kansas is a fact of common knowledge. The courts take judicial notice of it. (*Grimes v. Eddy,* 126 Mo. 168, 28 S. W. 756, 26 L. R. A. 638, 47 Am. St. Rep. 653.) Recent scientific investigation shows that animals coming from portions of that region, at least, are always likely to be capable of communicating what is known as Texas, splenetic, or Spanish, fever. The liability of infection from animals coming from other parts is so great that it cannot be said the regulation is unnecessary to guard properly against the danger to be apprehended.

There is so great a dissimilarity between this statute and the one under consideration in the case of *State v. Duckworth,* 5 Idaho, 642, 51 Pac. 456, 39 L. R. A. 365, 95 Am. St. Rep. 199, that the decision there made is not an authority. The prohibition upon importation is not absolute here, as in the case of *Railroad Co. v. Husen,* 95 U. S. 465, 24 L. Ed. 527. The discrimination between sections is based upon known conditions warranting it. The detention of cattle for inspection is not unduly burdensome. The cost of inspection is borne by the state itself. Cattle free from disease are passed under a certificate of health. Hence the statute is sustainable under the well-recognized power of the state to protect its live stock by reasonable inspection laws against the ravages of contagious and infectious diseases.

Some confusion between different provisions of the law relating to the general subject of live-stock sanitation and inspection is pointed out, but the section quoted above is not affected, and is sufficient to uphold the judgment of the district court.

Some minor questions are discussed. A reading of rule 13 of the interior department of the United States shows that it could not have contributed to the verdict rendered without connecting evidence not found in the record. Hence the error in admitting it was harmless.

The proof of every element of the offense charged was ample. The reference by the county attorney to the absence from the case of a certificate of inspection was not a reference to the failure of the defendant to testify. The instructions given are not printed in the brief, as required by rule 10, and from what has been said it is apparent the instructions refused were rightfully refused.

The judgment of the district court is affirmed.

All the Justices concurring.