[No. 2435]

## IN THE MATTER OF THE APPLICATION OF LEE GODDARD FOR A WRIT OF HABEAS CORPUS.

[190 Pac. 916]

1. STATUTES—PARTIAL INVALIDITY DOES NOT INVALIDATE INDEPENDENT PORTIONS.

   Though a portion of a statute is null and void, no other portion thereof will be affected thereby, unless it is dependent on the portion which is null and void.

2. CONSTITUTIONAL LAW—ONLY PERSONS AFFECTED CAN ATTACK CONSTITUTIONALITY.

   If a party's rights are not affected by a statute, or a part thereof, its constitutionality will not be considered upon his application.

3. COMMERCE—SHEEP COMMISSION LAW NOT INTERFERENCE WITH INTERSTATE COMMERCE.

   The sheep commission law *held* not violative of Const. U. S. art. 1, sec. 8; Congress not having covered the whole subject of the transportation of live stock from one state to another.

4. CONSTITUTIONAL LAW—SHEEP COMMISSION LAW NOT DISCRIMINATORY AGAINST CITIZENS OF OTHER STATES.

   The sheep commission law *held* not violative of Const. U. S. art. 4, secs. 1, 2, providing that citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states; the law being properly construed as referring to sheep brought into Nevada whether owned by citizens of Nevada or of a sister state.

5. ANIMALS—SHEEP COMMISSION LAW NOT UNREASONABLE, ARBITRARY, OR DISCRIMINATORY.

   The sheep commission law *held* not unreasonable, arbitrary, or discriminatory.

6. HABEAS CORPUS—CORRECTNESS OF STATEMENT OF FACTS IN GOVERNOR'S PROCLAMATION UNDER SHEEP COMMISSION LAW NOT REVIEWABLE.

   In habeas corpus proceedings by one convicted of violating the sheep commission law by driving sheep into Nevada from a state which the governor had by proclamation scheduled as a locality where scabies was epidemic, the correctness of the statement of facts contained in the governor's proclamation cannot be inquired into.

·7. CONSTITUTIONAL LAW — EVERY PRESUMPTION IN FAVOR OF
     VALIDITY.
         Every presumption is in favor of the validity of a statute.

ORIGINAL PROCEEDING. Application for writ of habeas
corpus by Lee Goddard. **Proceeding dismissed, and
petitioner remanded to custody.**

*Richard W. Young, Jr.,* for Petitioner:

The sheep commission law (Stats. 1919, c. 82), under
which petitioner has been arrested, is unconstitutional
because it is contrary to and in violation of section 8,
article 1, Constitution of the United States, which pro-
vides that Congress shall have power to regulate com-
merce with foreign nations and among the several states.
A state cannot, under the guise of exercising its police
power, enact inspection laws which burden foreign or
interstate commerce, or which impose upon property or
products brought into a state from another state bur-
dens or taxes more onerous than are imposed upon like
property or products of the state enacting such legis-
lation.   State v. Butterfield Co., 106 Pac. 455; In Re
Kenyon, 75 Pac. 268; Guy v. Baltimore, 100 U. S. 434;
Walling v. Michigan, 116 U. S. 446; Schollberger v.
State, 171 U. S. 1; Austin v. Tennessee, 179 U. S. 343.

The statute is repugnant to the provisions of sections
1 and 2, article 4, Constitution of the United States,
which provides that the citizens of each state shall be
entitled to all the privileges and immunities of citizens
of the several states.

Section 12 of the act, relating to the proclamation of
the governor against the importation of sheep from
Idaho, is unconstitutional, in that it discriminates
against sheep owned by residents of Idaho and in favor
of sheep owned by residents of Nevada.   The section
specifically states that the governor may issue his
proclamation against the importation of sheep from a
certain locality in another state.   In this case, he has
issued a blanket proclamation against the entire State
of Idaho.   "A proper quarantine measure will be upheld

where it can be shown that the source of the disease is local." Freund, Police Powers, sec. 138. Any statute which goes farther than a quarantine regulation is not a legitimate exercise of the state's police power. · Hannibal & St. J. R. R. Co. v. Husen, 24 Sup. Ct. 527; Prentice, Police Powers, p. 128. The law has provided that the proclamation shall run to infected localities, with the purpose, no doubt, that uninfected territory shall not share the same inconvenience and burden as the infected. Adams & Bryson v. Lytle, 154 Fed. 876.

The arrest of petitioner is unlawful, for the reason that the provisions of the statute under which he is held are unreasonable, arbitrary, and discriminatory, and beyond the necessity of the facts in his particular case. "By the enforcement of this rule, there may be entailed upon the owners of the flocks the burden of twice dipping perfectly healthy sheep, and the further inconvenience and expense of quarantine. The mere statement of the situation carries with it absolute persuasion of the unreasonableness of the rule. Adams & Bryson v. Lytle, supra.

*Leonard B. Fowler,* Attorney-General; *Robert Richards,* Deputy Attorney-General, and *Hoyt, Norcross, Thatcher, Woodburn & Henley,* for Respondents:

A statute may be in part constitutional and in part unconstitutional, and, if the parts are wholly independent of each other, that which is constitutional may stand. V. & T. R. R. Co. v. Henry, 8 Nev. 165; Gay v. Horsey, 41 Nev. 348; 36 Cyc. 976. This rule applies to criminal as well as to other statutes. 36 Cyc. 984.

No sheep inspection or quarantine law is offensive to the provisions of the commerce clause of the federal constitution, unless it is in effect an absolute prohibition against the introduction of sheep or other live stock, regardless of their condition, or imposes an unreasonable and onerous burden upon the sheep 'of the community involved, so as to restrict the freedom of commerce between the states. In the statute in question

there is no absolute prohibition of the introduction of sheep into the state, but they are admitted subject to certain requirements for the protection of Nevada sheep from infectious diseases, and such only as are deemed by the state to be absolutely necessary. Rasmussen v. Idaho, 45 L. Ed. 820. The state has the power to enact inspection and quarantine laws. The deposit in Congress of the power to regulate commerce among the states was not a surrender of the police power. The right of the several states to enact protective and precautionary measures of the kind in question is just as jealously guarded as the exclusive right of Congress to legislate upon matters regulating commerce. Reid v. Colorado, 47 L. Ed. 108.

Every statute is presumed to be constitutional. "It has been truly said that the presumption is in favor of every legislative act, and the whole burden of proof lies on him who denies its constitutionality." Brown v. Maryland, 12 Wheat. 436; Ogden v. Saunders, 12 Wheat. 270; Sharpless v. Mayor, 59 Am. Dec. 782; Munn v. Illinois, 94 U. S. 126. "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. * * * And as it does not appear, upon the face of this statute, or from the facts of which the court must take judicial cognizance, that it infringes rights secured by the fundamental law, the legislature's determination of those facts is conclusive upon the courts." Sinking Fund Cases, 25 L. Ed. 496.

By the Court, COLEMAN, C. J.:

This is an original proceeding in habeas corpus, to procure the discharge of the petitioner from the custody of the sheriff of Elko County, who holds him pursuant to proceedings had upon three separate complaints charging him with violating what is commonly known as the sheep commission law (Stats. 1919, c. 82, p. 134). The statute in question creates the state board of sheep commissioners, which is empowered to make and enforce

rules and regulations for the quarantining, dipping, or other treatment of sheep. Section 11 of the act provides:

"All sheep which are kept or herded within the limits of the State of Nevada shall, between the fifteenth day of April and the first day of November of each year, be dipped under the supervision of an authorized sheep inspector in one of the dips which have been recommended by the board; the said dip to be specified by the board and to be of a strength sufficient to eradicate scabies, ticks or lice."

Section 12 reads, in part, as follows:

"Whenever the governor of the state shall have good reason to believe that any disease covered by this enactment has become epidemic in a certain locality in any other state or territory, or that conditions exist that render sheep liable to convey disease, or whenever the board shall certify to the governor that conditions exist that render sheep likely to convey disease, the governor shall forthwith, by proclamation, schedule such locality or localities and prohibit the importation from them of any sheep into this state until such time as the said proclamation shall be raised or modified by the governor. Any person, company, or corporation, or any agent, servant, or employee thereof, who after the publication of such proclamation shall knowingly receive in charge any sheep from any of the prohibited districts, or transport, convey, or drive the same within the boundaries of any county of this state, shall be deemed guilty of a misdemeanor, and shall be punished as provided in section 26 of this act."

Section 15 of the act provides:

"All sheep or bucks imported to Nevada from any state, territory, or District of Columbia, or from any foreign country, shall, upon entering the state, irrespective of the time of such entry, be dipped twice under the supervision of an inspector of the board, the first dipping to be performed within ten days after the said sheep or bucks arrive in the state, and within a period of not less than ten days or more than fourteen days

after the said first dipping the said sheep or bucks shall again be dipped; and after the second dipping, if the said sheep or bucks are free of disease, they shall be released and shall thereupon become subject to the laws, rules, and regulations governing other sheep in the state; *provided, however*, that the board may make reasonable rules and regulations, under which sheep and bucks free from disease may enter the state without dipping, or by being dipped only once. The board is hereby authorized to take charge of and dip as soon as possible any sheep and bucks imported into the State of Nevada not previously dipped within the period required by this section, and the expenses for so doing shall be paid by the owner of said sheep or bucks and the same shall become a lien on such sheep or bucks until paid. Any person, firm, or corporation, or any servant, agent, or employee thereof, who is the owner or in charge or control of any sheep or bucks imported into the State of Nevada, violating the provisions of this section, shall be deemed guilty of a misdemeanor and shall be punished as provided for in section 26 of this act."

Section 9a of the rules adopted by the state board of sheep commissioners, and in force during all the times mentioned herein, reads:

"All sheep other than bucks imported or driven into the State of Nevada, from any other state, shall be accompanied by a health certificate not more than ten days old, signed by a state veterinarian, deputy state veterinarian, inspector of bureau of animal industry or any authorized sheep inspector, stating the sheep are free of disease or exposure thereto, and have not been in any district infected with scabies for the period of six months. Sheep accompanied by the above-described certificate may be admitted without dipping."

One of the complaints upon which the petitioner is held alleges that on or about April 12, 1919, the governor of the State of Nevada did, by proclamation, schedule the State of Idaho as a locality where scabies, a contagious disease, was epidemic, and thereby prohibited

the driving into or transporting of sheep from any part of Idaho into the State of Nevada, and that such proclamation was in force and effect at the time the petitioner is charged with driving the sheep in question from said State of Idaho into the State of Nevada.

1, 2. Counsel for petitioner says in his brief that, if the arrest and detention of the petitioner under either of the complaints in question is in violation of his constitutional rights, he must be discharged, since the act in question must be considered as a whole, and if a part thereof is bad, it must all be held null and void. This court has repeatedly held that, even though a portion of a statute is null and void, no other portion thereof will be affected thereby unless it is dependent upon the portion which is null and void (State v. Commrs. Humboldt County, 21 Nev. 235, 29 Pac. 974; Ex Parte Arascada, 44 Nev. 30, 189 Pac. 619) ; and it is also a well-established rule that if a party's rights are not affected by a statute, or a part thereof, its constitutionality will not be considered upon his application (State v. Beck, 25 Nev. 68, 56 Pac. 1008; 6 R. C. L. p. 89) ; and if the petitioner must be held for violating either of the sections of the act in question, even though there be a section which is void, but of which the section he violates is independent, we do not deem it our duty to consider the constitutionality of any other section thereof, for he certainly could be punished only once for the same act.

From a written stipulation entered into between counsel, and on file herein, it appears that the proclamation of the governor of Nevada is a "lawful" one. This concession, taken broadly, it would seem, necessarily disposes of the matter; for if it is a lawful proclamation, we must assume that the law authorizing such action on the part of the governor is constitutional, and that he had good reason to believe that the State of Idaho was an infected territory. But in view of the contention of counsel for petitioner, we are at a loss in reaching a conclusion as to just what is meant by the stipulation mentioned.

In the written brief, as well as in the oral argument, counsel bases petitioner's right to a discharge upon three grounds: (1) That the act in question is contrary to and in violation of that portion of section 8, article 1, of the federal constitution, which provides that Congress shall have power to regulate commerce with foreign nations and among the several states; (2) that the act is repugnant to the provisions of sections 1 and 2 of article 4 of the federal constitution, which provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states; and (3) that the arrest is unlawful for the reason that the provisions of the act under which petitioner was arrested and detained are arbitrary, unreasonable, and discriminatory.

3.   Taking up the first ground urged by counsel for petitioner, we need only to say that, while Congress has power to regulate commerce among the several states, it has not covered the whole subject of the transportation of live stock from one state to another, and has left it to the several states to legislate upon this very question; and hence our legislature had authority to enact appropriate legislation upon this branch of the law, subject to the limitations stated in Asbell v. Kansas, 209 U. S. 251–258, 28 Sup. Ct. 485, 52 L. Ed. 778; 14 Ann. Cas. 1101, which do not affect this matter.

4.   As to the second point, it does not appear that the act is more favorable to citizens of this state than to those of our sister states. We construe the act to refer to sheep which are brought into this state, whether they belong to citizens of this state or of a sister state; and, as we construe the decisions of the Supreme Court of the United States, such an act does not violate either the letter or the spirit of the federal constitution. Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108.

5.   We are now brought to a consideration of the last point urged by counsel, to the effect that the statute in question is unreasonable, arbitrary, and discriminatory. It appears that scabies is one of the oldest known,

most contagious, and most injurious diseases affecting sheep, and that it spreads very rapidly after being introduced into a flock, but that it is communicated through the medium of infected ranges, trails, pastures, corrals, and watering places, and that there are frequent cases of a stray from an infected flock being found in another flock twenty miles distant; that, when allowed to spread, the disease causes great financial loss; that under certain conditions the mites will lie dormant for several months; that when a sheep becomes infected the female mite will lay some fifteen eggs, which hatch after a three or four days' period, and the young mites grow to maturity in seven to ten days and in three or four more days begin to deposit eggs; that in Nevada the usual time before the disease, under painstaking inspection, can be detected, after exposure, is between 90 and 180 days, and that the sheep in question upon coming into Nevada were unaccompanied by a health certificate not more than ten days old, stating that the said sheep were free from disease or exposure thereto, and had not been in any district infected by scabies within six months prior to their being driven into this state.

Our attention is invited to the cases of State v. Duckworth, 5 Idaho, 642, 51 Pac. 456, 39 L. R. A. 365, 95 Am. St. Rep. 199, Hannibal & St. J. Ry. Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527, and Adams & Bryson v. Lytle (C. C.) 154 Fed. 876, as authorities in support of petitioner's contention. There is such a wide difference between the Nevada statute, and rules made in pursuance thereof, and the Idaho statute construed in the Duckworth case, that the decision in that case is not an authority in point. Nor is the exclusion of the sheep, under the act and rules in question, absolute, as in the Husen case, and it is this feature which differentiates that case from the instant one. Nor do we think that Adams & Bryson v. Lytle, supra, an authority supporting petitioner's contention. The statute under consideration in that case is similar to ours, and the learned judge who rendered the opinion expressly says:

"I am not disposed to question the reasonableness of any of the provisions" of the act considered.

From that opinion it also appears that the governor of Oregon issued his proclamation, declaring the States. of Washington, Nevada, and California presumably infected with scabies, and prohibited the importation of sheep from any of said states. The court, referring to the proclamation of the governor of Oregon, said:

"It is quite true that, because of the proclamation of the governor, sheep coming from the State of Washington are presumably infected."

6.   In a proceeding of this kind, the question as to the correctness of the statement of facts contained in the governor's proclamation cannot be inquired into. At any rate, there is nothing before us tending to show that the proclamation of the governor was not well founded, and we must presume that it was. The case of Adams & Bryson v. Lytle was an action in equity to restrain certain officers from interfering with the driving of certain sheep from Washington into Oregon, and in that case certain testimony was considered to enable the court to determine as a matter of fact whether the section of Washington from which the sheep in question were being driven was territory infected with scabies, and the court expressly says:

"Now, the testimony adduced by affidavit and orally shows beyond cavil that the sheep which the complainants propose bringing into the state are entirely free from scabies or infectious diseases of any kind; that there has been no disease or contagion within the counties or localities from which the sheep are being. driven for at least nine years; and that the sheep are not to pass through any infected territory before reaching the state-line. * * *. Here, therefore, is a case where sheep, perfectly healthy, being driven from localities not infected in any way and through uninfected territory, are about to enter the state."

A distinguishing feature between that case and the one at bar is that in that case the sheep were not only

perfectly healthy, but were being driven from localities not infected in any way, while in the case before us the sheep came from a locality admittedly infected.

But we see no occasion for a long-drawn-out discussion of this case, for to our mind it is controlled by that of Asbell v. Kansas, 209 U. S. 251–258, 28 Sup. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101, which, apparently, was overlooked by counsel for petitioner. It appears from the opinion in that case that the statute of Kansas makes it a misdemeanor, punishable by fine and imprisonment, for any person to transport into the state cattle from any point south of the south line of the state, except for immediate slaughter, without first having caused them to be inspected and passed as healthy by certain officials. Asbell was convicted of violating the statute mentioned, and from a judgment of the Supreme Court of Kansas affirming the judgment of conviction he took a writ of error to the Supreme Court of the United States, and that court upheld the right of a sovereign state to adopt in good faith such reasonable regulations, as a police measure, as might be necessary to protect the health of its own animals. In that case, in a unanimous opinion, the court says:

"Cattle, while in the course of transportation from one state to another * * * may * * * be the conveyance by which disease is brought within the state to which they are destined, and in that respect subject to the power of the state exercised in good faith to protect the health of its own animals and its own people. In the execution of that power the state may enact laws for the inspection of animals coming from other states with the purpose of excluding those which are diseased and admitting those which are healthy. Reid v. Colorado, 187 U. S. 137, 47 L. Ed. 108, 23 Sup. Ct. 92."

That some regulations to protect the sheep of this state from sheep infected with scabies or coming from an infected section in another state are amply justified is clear from a consideration of the character of the

disease, the manner and ease of its communication, the difficulty of detecting it, and the further fact that it may not be detected for 180 days after a flock has been exposed. It is clear from a reading of the statute, and the rules adopted in pursuance thereof, that they were adopted purely as a police measure for the protection of the sheep of this state. This is manifest from the fact that section 9a of the rules, above quoted, expressly provides that sheep from another state, accompanied by a health certificate, may be admitted without dipping.

7. Every presumption is in favor of the validity of the statute, and were there a doubt upon the question it would be our duty to resolve that doubt in its favor; but we are of the opinion that the reasonableness of the statute and the rules, and the good faith of the legislature and of the board in adopting the rules, are so apparent that there can be no question as to their validity.

We are of the opinion that these proceedings should be dismissed, and that the petitioner should be remanded to the custody of the sheriff; and it is so ordered.