## No. 11,353.

### THE PEOPLE *v*. MORGAN.

Decided May 24, 1926.

Defendant in error was charged with a violation of the migratory stock act. Motion to quash information sustained, and defendant discharged.

### *Ruling Approved.*

1. STATUTES—*Construction.* A statute will be sustained if possible.

   An act will be harmonized to give effect to every clause and section, if it can be done.

   The legislative intent will be ascertained and given effect if possible.

2. CONSTITUTIONAL LAW—*Statutes—Construction.* If a statute be found to be partly constitutional and partly unconstitutional, and the invalid part is severable, the valid part may stand while the invalid is rejected.

3. STATUTES—*Legislation—Presumption.* The good faith of the legislature in passing laws will be presumed.

4. CONSTITUTIONAL LAW—*Statutes.* Independently of any question of intent, a state enactment is void, if by its necessary operation it destroys rights granted or secured by the Constitution of the United States.

5. LIVE STOCK—*Constitutional Law.* Section 6 of chapter 165, S. L. '25, relating to migratory stock, held unconstitutional.

6. CONSTITUTIONAL LAW—*Statutes—Legislation.* When it is plain that the legislature would not have passed an act without a section which is unconstitutional, the whole act must fall.

7. LEGISLATION—*Health—Live Stock.* The legislature may pass laws to protect the health of its citizens, and to prevent or suppress diseases among live stock, which are not in conflict with the federal or state Constitutions.

8. LIVE STOCK—*Statutes—Constitutional Law.* The migratory stock act, c. 165, S. L. '25, held unconstitutional.

*Error to the County Court of Moffat County, Hon. F. D. Guinn, Judge.*

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. JEAN S. BREITENSTEIN, Assistant, Mr. C. R. MONSON, for the people.

Messrs. BRIMMER & BRIMMER, Mr. GEORGE A. PUGHE, for defendant in error.

*En banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

AN information was filed in the county court of Moffat county, charging the defendant Chester Morgan with driving sheep into that county, from the state of Wyoming, without having notified the sheriff of Moffat county ten days before the crossing of the Colorado state line, of his intention to do so. The law alleged to have been violated is what is known as the "Migratory Stock Act" of the Colorado Legislature, L. 1925, chapter 165, pages 489-491. Defendant filed a motion to quash the information, on the ground that the statute is in violation of the Constitution of the United States, and consequently void. The court sustained the motion and defendant was discharged. A writ of error on behalf of the people has been sued out from this court to review the judgment, pursuant to the provisions of C. L. 1921, section 7113.

The act under scrutiny and claimed to be void, L. 1925, c. 165, is entitled: "An act in relation to the regulation of the livestock industry; defining migratory live stock; providing for the suppression and inspection of disease among same; affixing an inspection fee and providing a penalty for the violation of this act and declaring an emergency." The salient parts of the text are as follows:

"Section 1. By the term 'migratory live stock' is meant such live stock as is temporarily kept, driven or pastured or suffered to range or graze for temporary period of not less than ten days in this State from adjoining States.

Section 2. Whenever any migratory live stock is driven into or pastured or suffered to range or graze in this State from an adjoining State, the owner thereof or his agent, shall ten days before crossing the State line notify the Sheriff of the County into which such entry is made of such entry. It shall be the duty of the Sheriff of each County to inspect or cause to be inspected any migratory live stock within the County, for the purpose of determining whether or not such live stock is affected with any infectious, contagious or communicable disease.

Section 3. Should the Sheriff or other person designated by him as Inspector find such migratory live stock to be affected with any infectious, contagious or communicable disease, the State Board of Live Stock Inspection, or other State Officer who may be empowered and authorized to place under quarantine any live stock so affected or infected shall be notified immediately by such officer so that any necessary action may be taken by such Board or Officer for the control or eradiction of such disease.

Section 4. In carrying out the provisions of this Act, the Sheriff or his Deputy or Inspector appointed by the Sheriff shall collect a fee of 50 cents per head on all cattle and horses and 25 cents per head on all sheep or goats entering the State of Colorado from another State for the purpose of ranging or grazing within this State. All fees so collected shall be paid monthly by the Sheriff to the County Treasurer for deposit in the general fund of the County.

Section 5. Any person, firm or corporation violating any of the provisions of this Act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than $100 and not more than $1,000 or

by imprisonment of a term of not to exceed 6 months, or by both such fine and imprisonment.

Section 6. Nothing in this Act shall apply to livestock grazing solely upon any body of lands intersected by or contiguous to the Colorado boundary line and which lands are in the exclusive ownership, use or possession of the owner of such livestock, or to livestock in transit, or feeding in transit through this State by railroad or other means of public transportation, nor shall it be construed as affecting livestock owned by residents of this State which are ranged a portion of the year in adjoining states, or which are taken into adjoining States for shipment back into this State, and no railroad company shall be liable for any penalty for receiving and shipping such livestock.

Section 7. If any section, paragraph, clause, word or phrase in this Act shall be declared unconstitutional, the invalidity thereof shall not affect the remainder of this Act.''

1. In the construction of the statute, the following well known rules will be applied:

The statute will be sustained, if possible. *Reid v. Colorado,* 187 U. S. 137, 153, 23 Sup. Ct. 92, 47 L. Ed. 108; *Smith v. Mahoney,* 22 Ariz. 342, 197 Pac. 704.

The act will be harmonized to give effect to every clause and section, if it can be done. *Campbell v. People,* 78 Colo. 131, 239 Pac. 879.

The legislative intent will be ascertained and given effect if possible. *County Commissioners v. Lunney,* 46 Colo. 403, 415, 104 Pac. 495 and cases there cited.

If the statute be found to be partly constitutional and partly unconstitutional, and the invalid part is severable, the valid part may stand, while the invalid is rejected. *Newman v. People,* 23 Colo. 300, 309, 47 Pac. 278; *Standard Lumber Co. v. Pierce,* 112 Ore. 314, 228 Pac. 812; 1 Lewis' Sutherland Statutory Construction, 576, § 296.

The good faith of the legislature will be presumed. *Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. 862,

34 L. Ed. 455; *New Mexico, ex rel. McLean v. Denver & Rio Grande R. R. Co.*, 203 U. S. 38, 55, 27 Sup. Ct. 1, 51 L. Ed. 78.

Independently of any question of intent, a state enactment is void, if by its necessary operation it destroys rights granted or secured by the Constitution of the United States. *Brimmer v. Rebman*, 138 U. S. 78, 11 Sup. Ct. 213, 35 L. Ed. 862.

2. Section six of the above act of the legislature provides, among other things, that it does not affect live stock owned by residents of this state which are ranged a portion of the year in adjoining states, or which are taken for shipment back into this state. By sections one, two, and subsequent sections, the act is made to apply to migratory live stock driven into or suffered to range or graze in this state from adjoining states. In other words, one rule is made for residents of Colorado, and another for nonresidents. If inspection is necessary for the one, it is necessary for the other.

The above discrimination is repugnant to clause 1, section 2, article 4 of the Constitution of the United States, which entitles the citizens of each state to all privileges and immunities of citizens in the several states. It is also contrary to that part of section 1 of the 14th amendment to the Constitution of the United States, which forbids any state from making or enforcing any law abridging the privileges and immunities of the citizens of the United States.

For the above reasons, section six of the migratory live stock law, creating such discrimination, cannot be sustained. *Leonard v. Reed*, 46 Colo. 307, 104 Pac. 410, 133 Am. St. Rep. 77; *Smith v. Farr*, 46 Colo. 364, 104 Pac. 401; *Carbon County Sheep and Cattle Co. v. County Commissioners of Routt County*, 60 Colo. 224, 152 Pac. 903.

3. The elimination of section six of the act suggests the question as to whether the remaining portion of the

law can be sustained, under the provisions of section seven—the effect on the remainder when a part has been declared unconstitutional.

We would give effect to the remainder if we could, if otherwise valid and in keeping with the intention of the legislature. But from the standpoint of the legislative intent, it cannot be sustained. To uphold the law, it would have to be made applicable to residents of Colorado, whereas the act itself plainly declares that such is not its purpose.

In order to sustain the statute, we would have to create a valid measure out of an invalid one, by inserting provisions that the act does not contain. In the language of Mr. Chief Justice Taft, in *Hill v. Wallace,* 259 U. S. 44, 70, 42 Sup. Ct. 453, 66 L. Ed. 822, "This is legislative work beyond the power and function of the court."

When it is plain that the legislature would not have passed the act without the section condemned, the whole act must fall with it. *Leddy v. People,* 59 Colo. 120, 147 Pac. 365; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 565, 22 Sup. Ct. 431, 46 L. Ed. 679.

The different sections of the act of the legislature above set out are so inter-dependent, so "essentially and inseparably connected in substance," that when one falls, the whole structure goes down. 1 Lewis' Sutherland Statutory Construction, 576, Sec. 296; *Arthur v. State,* 148 Tenn. 434, 256 S. W. 437; *Howard v. Illinois C. R. Co.,* (Employers' Liability Cases) 207 U. S. 463, 501, 28 Sup. Ct. 141, 52 L. Ed. 297.

4. Nothing here said is intended to deny the right of the legislature to pass non-discriminatory quarantine and inspection laws, in harmony with our Constitution and the Constitution and statutes of the United States, having for their object the health of the citizens of the state, or the prevention or suppression of diseases among live stock, and to provide a *reasonable* fee for the

purpose of and commensurate with the cost of inspection, but not to provide for governmental revenue, under the guise of inspection. This right of the state has long been recognized. *Gibbons v. Odgen,* 9 Wheat. 1, 6 L. Ed. 23; *Reid v. People,* 29 Colo. 333, 340, 68 Pac. 228, 93 Am. St. Rep. 69; *Reid v. People, supra; Asbell v. Kansas,* 209 U. S. 251, 28 Sup. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101; *Oregon-Washington R. and Nav. Co. v. State of Washington,* (U. S.) 46 Sup. Ct. 279. These are only a few of the cases sustaining the right.

5.   Other reasons are assigned why the statute is said to be unconstitutional, but those that we have mentioned are sufficient. The law upon the subject of quarantine and inspection is so well settled, the limitations so well defined, they have been announced in so many decisions of the Supreme Court of the United States, and have been previously passed upon by this court and the courts of other states so often, that a repetition is made unnecessary.

Additional authorities cited in the briefs, which we refer to without further comment, are:

By counsel for the state: *People v. McPherson,* 76 Colo. 395, 232 Pac. 675; *Patrick v. State,* 17 Wyo. 260, 98 Pac. 588, 129 Am. St. Rep. 1109; *Evans v. C. & N. W. Ry. Co.,* 109 Minn. 64, 122 N. W. 876, 26 L. R. A. (N. S.) 278; *Ex parte Goddard,* 44 Nev. 128, 190 Pac. 916; *Foote v. Stanley,* 232 U. S. 494, 34 Sup. Ct. 377, 58 L. Ed. 698; 32 C. J. 934, 936; *McKelvey v. U. S.,* 260 U. S. 353, 43 Sup. Ct. 132, 67 L. Ed. 301; *Red "C" Oil Manufacturing Co. v. Board of Agriculture,* 222 U. S. 380, 32 Sup. Ct. 152, 56 L. Ed. 240; *Pure Oil Co. v. Minnesota,* 248 U. S. 158; 39 Sup. Ct. 35, 63 L. Ed. 180.

By counsel for defendant in error: *State v. Duckworth,* 5 Idaho, 642, 51 Pac. 456, 39 L. R. A. 365, 95 Am. St. Rep. 199; *State v. Butterfield Livestock Co.,* 17 Idaho, 441, 106 Pac. 455, 26 L. R. A. (N. S.) 1224, 134 Am. St. Rep. 263; *Schmidt v. People,* 18 Colo. 78, 31 Pac. 498; *Voight*

*v. Wright,* 141 U. S. 62, 11 Sup. Ct. 855, 35 L. Ed. 638; *Standard Oil Co. v. Graves,* 249 U. S. 389, 39 Sup. Ct. 320, 63 L. Ed. 662; *Texas Co. v. Brown,* 266 Fed. 577, 258 U. S. 467, 42 Sup. Ct. 375, 66 L. Ed. 566; *Pittsburg C. & St. L. Ry. Co. v. State,* 49 Ohio St. 189, 30 N. E. 434, 16 L. R. A. 380; 14 R. C. L. 687, Sec. 8; *Reser v. Umatilla Co.,* 48 Ore. 326, 86 Pac. 595, 120 Am. St. Rep. 815; *Board of County Com'rs v. Dunn,* 21 Colo. 185, 40 Pac. 357.

The judgment of the county court is approved.