ADAMS & BRYSON et al. v. LYTLE, State Sheep Inspector, et al.

(Circuit Court, D. Oregon.  June 17, 1907.)

No. 3,152.

1. CONSTITUTIONAL LAW—IMMUNITIES OF CITIZENS.

Laws Or. 1907, p. 383, c. 223, regulating the importation of sheep from other states, and providing for the treatment and quarantine of sheep affected with scabies, etc., was equally applicable to the citizens of all the states, without discrimination, and was therefore not in conflict with Const. art. 4, § 2, guarantying to the citizens of each state the privileges and immunities of the citizens of the several states.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 638.]

2. ANIMALS—HEALTH REGULATIONS—SHEEP CULTURE.

Laws Or. 1907, pp. 383–385, c. 223, providing for the appointment of a board of sheep commissioners, authorized to formulate regulations governing the control and eradication of diseases among sheep within the state, the appointment of sheep inspectors to investigate cases of contagious and infectious diseases among sheep within the state and sheep brought from other states, and regulating the transportation of such sheep and the dipping thereof, in accordance with the manner prescribed by the Department of Agriculture of the United States, etc., was not objectionable for unreasonableness.

3. SAME—RULES.

Laws Or. 1907, pp. 383–385, c. 223, providing for the regulation of sheep raising, requires the giving notice of the intended driving of a band of sheep, through the state, and requires an inspection, on which shall depend whether the sheep shall be dipped and quarantined. Held, that a rule adopted by the board of sheep commissioners, requiring the owners of sheep driven from other states into Oregon to dip them twice, immediately after entering the state, whether the sheep were diseased or not, and also requiring such sheep to be quarantined, was unreasonable, and that the owners of a band of healthy sheep, which had been inspected and dipped in accordance with the requirements of the Department of Agriculture before they were started on their journey, were entitled to drive them into the state for pasture, without compliance with such rule; being subject on arrival only to the regulations governing diseased sheep within the state.

## In Equity.

This is a suit instituted by a number of sheep owners, who are possessed of flocks aggregating 50,000 head, kept in the counties of Walla Walla, Columbia, Garfield, and Asotin, in the state of Washington, against W. H. Lytle, sheep inspector of the state of Oregon, John Bryant, deputy sheep inspector for the county of Umatilla, and T. F. Boylen, Dan P. Smythe, and W. H. Steusloff, constituting the board of sheep commissioners of the state, to restrain these officers from in any manner interfering with complainants driving their sheep across the line into the state of Oregon and pasturing them therein. It appears from the bill of complaint that complainants are allottees from the general government, with the privilege of pasturing their

sheep upon that portion of the Wenaha Forest reserve lying within the state of Oregon for the year 1907; that in order to reach such reserve it is necessary to drive through a portion of Umatilla county in Oregon; and that a separate range is necessary for the pasturage of such sheep during the spring, summer, and fall months because of the insufficiency of feed for their sustenance where they are at present confined. Following this, it is averred, in effect, that the defendants and a large number of persons in the sheep business in the state of Oregon combined and confederated together for the purpose of procuring the exclusion of all sheep belonging to nonresidents of the state, including the sheep of complainants, from ranging upon the said Wenaha reserve in the state of Oregon, and to that end secured the passage of an act through the Legislative Assembly of the state of Oregon during the 1907 session, known as "House Bill No. 17." (Laws 1907, p. 383, c. 223), which contains provisions inimical to complainants' rights and privileges; that by virtue of such act the Governor of the state of Oregon, on May 9, 1907, made a proclamation declaring the states of Washington, Nevada, and California presumably infected with scabies, and prohibited the importation of any sheep from each and all of such states except under such regulations as the state board of sheep commissioners might deem proper; that the alleged facts upon which is based the necessity for such proclamation were and are false and groundless, and were attested to the Governor for the purpose of deceiving and misleading him, and inducing him to assist defendants in excluding complainants' flocks; that the board of sheep commissioners, acting in pursuance of such proclamation, have issued and published certain rules prescribing regulations under which sheep from the prohibited states may be brought into the state of Oregon, which regulations require that the persons or corporations driving sheep within the state shall, immediately upon crossing the line and within one mile thereof, make written application to the sheep inspector of the state or his nearest deputy for the inspection of the sheep, whereupon the inspector or deputy is required to proceed at once to inspect said sheep, and within six days thereafter to cause them to be dipped once in the manner prescribed for dipping within the state, and thereupon to place them in quarantine for a period of not less than eight, nor more than fourteen, days, fixing the quarantine limits, and to cause said sheep to be dipped again within the period from the said eighth to the fourteenth day, when the said inspector or his deputy is required to deliver to the owner a certificate of health, and to permit the sheep to proceed on their route to destination. It is further averred that these regulations are unreasonable. and that it is impossible, because of the condition of the country through which the sheep will be driven, for complainants to comply with them, there being no facilities afforded for dipping, quarantining, or feeding, and that, if required to conform to such regulations, complainants will suffer great hardship and irreparable loss; that complainants' sheep are healthy and free from any infection; that the territory and locality in which they are now confined, and have been kept and pastured for years past, is free from any infectious or contagious diseases; that the Governor of the state of Oregon and said sheep inspector arbitrarily and without cause determined that the sheep from the state of Washington are likely to convey scab or scabies if imported into the state of Oregon; that complainants have fully complied, or intend to comply, with the laws of Congress regulating the inspection of sheep passing from one state into another; and that said sheep will all be dipped, under the supervision of the Veterinary Inspector of the Bureau of Animal Industry of the United States, within 10 days prior to crossing the line into this state. Answering this bill under oath, the defendants deny all allegations averring combination or confederation in the passage of the bill complained against, and deny any arbitrary or unwarranted acts on the part of the Governor or the sheep inspector of Oregon in determining the matters and things essential, upon which was founded the proclamation of the Governor, or upon the part of the Governor in issuing such proclamation, and deny all other allegations of fact touching the condition of such sheep or the localities in which they are being kept, and of the conditions to be met with on the way in driving the sheep to the Wenaha reserve. Several affidavits have been filed in support of the bill, but none of them con-

tain additional matter, except that it is charged specifically that the Umatilla Wool, Growers' Association, which association sought allotments upon the Wenaha reserve, but without success, urged the election of candidates to the Legislature pledged to the support of a bill containing provisions in import the same as contained in House Bill No. 17; that one Slusher was elected to said Assembly; that he introduced the bill in question and procured its passage; and that another bill was introduced and passed by the Legislature known as the "Hart Bill," providing for licensing sheep driven from other states into this, and requiring the payment of 20 cents per head before such license may be issued.

Herbert C. Bryson and Oscar Cain, for complainants.

A. M. Crawford, Atty. Gen., T. G. Hailey, and Dan P. Smythe, for defendants.

WOLVERTON, District Judge (after stating the facts). The foregoing résumé of the facts upon which the suit is based conveys a fair idea of the conditions attending the controversy. Three points were insisted upon by counsel for complainants: First, that the act of the Oregon State Legislative Assembly in question is in conflict with article 4, § 2, of the federal Constitution, providing that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states"; second, that the proclamation issued by the Governor of the state of Oregon and the rules promulgated by the sheep commission are not warranted by the law, even though the same should be held to be a valid exercise of legislative power; third, that the rules promulgated by the Oregon sheep commission are harsh and unreasonable, and beyond the necessity for their exercise, and that compliance therewith is impossible.

The first point has been determined against the contention of counsel by the United States Supreme Court in the case of Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108. I quote from the opinion of the court:

"The statute is equally applicable to citizens of all the states. No discrimination is shown. No privileges are granted to citizens of Colorado that are denied to citizens of other states."

This language is exactly applicable here, and no further comment is necessary.

We may as well dismiss another feature of the controversy, which is brought into the record by the insistence that the Legislature acted corruptly in passing the bill in question, and that the Governor acted arbitrarily and without warrant under the facts shown for issuing his proclamation. True, the affidavit of Mr. Bryson would indicate that the Umatilla Wool Growers' Association was active in securing the election of a representative to the Legislative Assembly of the state of Oregon favorable to the adoption of a law requiring the rigid inspection of sheep introduced into this state from another, and that House Bill No. 17 was introduced by the representative elected and passed by the Assembly; but there is no intimation anywhere that the Assembly itself was in any way corrupt or violated any circumspection which should attend the considerations of that body in passing the measure into law. Furthermore, from a consideration of the showing upon which

the Governor acted, it is manifest that he acted neither arbitrarily nor without pertinent cause in issuing his proclamation.

The other points advanced require reference to the provisions of the statute involved. Under sections 1, 2, 4, 5, and 6, Laws 1907, pp. 383–385, c. 223, the Governor is authorized to appoint a board of sheep commissioners, to consists of three members, with power and authority to make rules and regulations for its own government, to exercise general supervision over, and, so far as may be, to protect the sheep interests of the state from losses, from theft, and from disease, and to formulate and issue regulations governing the control and eradication of disease among sheep within the state, not in conflict with the provisions of the act. The board is also authorized to appoint a sheep inspector, is given general control over such inspector, and is further required to make regulations touching his procedure and that of his deputies. The sheep inspector is authorized to appoint deputies in the several counties, if deemed necessary. By section 7 it is made the duty of the sheep inspector, or his deputies under his direction, to investigate all cases of contagious and infectious diseases among sheep within the state and sheep brought into the state in any manner from any state, territory, or foreign country, and particularly from any locality included or defined in any proclamation issued by the Governor establishing a quarantine, and he or they are empowered to order a quarantine of any infected premises, and, in case disease shall become prevalent in any locality within the state, the board of sheep commissioners may issue upon the recommendation of the state sheep inspector, a proclamation forbidding any sheep being transferred from said locality without a certificate from the inspector or one of his deputies showing such animals to be in good health. Section 9 provides that, whenever the Governor of the state has reason to believe that scab or other contagious or infectious disease of sheep has become prevalent in any locality or localities of any other state or territory, or that conditions exist that render sheep from such localities likely to convey disease, or whenever the state sheep inspector shall certify in writing to the Governor that conditions exist in certain localities in any other state or territory which may render any of the sheep coming therefrom likely to convey disease, the Governor shall forthwith by proclamation designate and declare such locality or localities as presumably infected, and prohibit importation therefrom of any sheep into this state, except under such restrictions as the board of sheep commissioners shall deem proper. By section 10 it is provided that all dipping and other treatment required for the control and eradicating of such diseases within this state shall be performed in the manner prescribed by the Department of Agriculture of the United States in its regulations governing interstate shipments of sheep, and the dips, remedies, and appliances used shall be those approved by the Department of Agriculture. By section 11 all sheep within this state are required to be dipped at least once during each year with some standard dip approved as a remedy for scab or scabies, as a preventative of such disease, by the United States Department of Agriculture, whether the same at the time are diseased or not, and in case of diseased sheep the same are to be dipped as often as required by the state sheep inspector, his deputies or the officials

of the United States Bureau of Animal Industry. The annual dipping which is required is to take place between the dates of April 1st and August 1st in each year. After such dipping the official in charge is required to issue a certificate of health, which certificate shall permit such sheep to pass in and through all counties in the state so long as they remain free from disease. By section 12, the state sheep inspector and his deputies and the officials of the United States Bureau of Animal Industry have authority to inspect and quarantine and treat sheep affected with contagious or infectious diseases, or suspected of being so affected, or that have been exposed to any such disease; and either of said officials may be called upon in writing at any time by one or more sheep growers owning sheep and paying taxes within the state to inspect any band of sheep in his or their vicinity. Section 13 provides that, whenever, upon examination by the state sheep inspector, his deputy or deputies, or a federal inspector, any sheep, band or flock of sheep, or any portion of them, kept or herded in any county of the state of Oregon, shall be found infected with scab or any other contagious or infectious disease, the entire band or flock in which said infected sheep are running or ranging shall be considered as infected and treated as such, and said state sheep inspector, his deputy, etc., shall immediately quarantine the entire band or flock, and forthwith notify the owner or person in charge of said sheep, in writing, to dip said sheep twice for said disease within the period of 30 days from said notice; the first dipping not to exceed 15 days from the receipt of said notice, and the second to be within the period of from 8 to 14 days from the first; and also, during such period, to keep such sheep free from contact with other sheep, by such means as said inspector shall specify, until after the second dipping. Section 14 provides that any person, persons, firm, or corporation within the state, who shall desire to move his or their sheep which are infected by scab or other infectious or contagious disease from place to place within the state, shall first obtain from the state sheep inspector or one of his deputies a traveling permit. Upon receipt of the application for such permit, the state sheep inspector or one of his deputies shall examine the sheep, and such permit shall only be granted for the purpose of removing said sheep to the nearest suitable point where there are available dipping works, or where such works can be constructed, at which place said sheep shall be dipped, under the direction of such official. Section 15 provides that any person, persons, firm or corporation, their agents or employés, who shall drive or herd, or cause to be driven or herded, or bring or cause to be brought, by road or trail into the state of Oregon from any other state, any sheep shall immediately upon crossing the said line, and before proceeding into the state a distance greater than one mile, make written application to the state sheep inspector, or his nearest deputy, for the inspection of said sheep, and said application shall be delivered in person, or by telegraph or telephone or registered letter; and further. that the inspector, on receiving such notice, shall at once proceed, either by himself or his deputies, to inspect the sheep, and if upon inspection he shall deem it necessary to prevent or avoid infection, he shall cause said sheep to be dipped not to exceed three times before they are released from such quarantine.

I am not disposed to question the reasonableness of any of the provisions above noticed of the act under review. Manifestly, the Legislature designed to have the law very perfect and rigid in all of its details, with a view to the prevention and eradication of diseases among sheep in the state of Oregon. The national government not having covered the entire field by its legislation and supervisory control touching the transportation of sheep from one state into another, the Legislature of this state had the undoubted authority to regulate by reasonable enactment the transportation of sheep from other states into this, so as to prevent the introduction or spread of any infectious diseases therein. Reid v. Colorado, supra: Rasmussen v. Idaho, 181 U. S. 198, 21 Sup. Ct. 594, 45 L. Ed. 820.

The complainants' third point questions the necessity for and the reasonableness of the rules promulgated by the state board of sheep commissioners. It will be seen by reference to rule 2, which is set out in the bill of complaint, that it is made the imperative duty of the state sheep inspector or his deputy, on receiving the notice provided to be given by parties driving sheep into the state, to proceed to inspect, to dip once within six days, then to quarantine for a period of from eight to fourteen days, and to dip again in the meanwhile; all this to be done whatever may be the result of the inspection, whether the inspector finds the sheep healthy or otherwise, or whether they have in any way been exposed or not, or whether they come from uninfected territory or not. The law itself provides for giving a notice and for an inspection by the inspector. It provides further that the dipping and quarantine shall depend upon the result of the inspection. But not so with the rule complained of. By the enforcement of this rule, there may be entailed upon the owners of these flocks the burden of twice dipping perfectly healthy sheep, and the further inconvenience and expense of quarantine. The mere statement of the situation carries with it absolute persuasion of the unreasonableness of the rule. It is quite true that, because of the proclamation of the Governor, sheep coming from the state of Washington are presumably infected; but the presumption from its very nature is a disputable one. If not, why require an inspection after the sheep have passed the state lines at all? Furthermore, the presumption attaching in the present case must be conceded to be less persuasive by reason of the fact that the proclamation comprised the whole state of Washington, when by the law it seems to have been intended that it should extend only to the infected localities therein. Of course, it is not beyond the nature of things for the whole state to be infected, but it is more than probable that there are localities therein absolutely free from any contagion. So it is the law has provided that the proclamation shall run to infected localities, with the purpose, no doubt, that uninfected territory shall not share the same inconveniences and burden as the infected. Now, the testimony adduced by affidavit and orally shows beyond cavil that the sheep which the complainants' propose bringing into the state are entirely free from scabies or infectious diseases of any kind; that there has been no disease or contagion within the counties or localities from which the sheep are being driven for at least nine years; and that the sheep are not to pass through any

infected territory before reaching the state line. Among the persons attesting to this state of facts are S. B. Nelson, the state veterinary for Washington, and S. W. McClure of the Bureau of Animal Industry, inspector in charge at Pendleton, Or. From a suggestion of the latter, it appears that the sheep might be exposed after passing into Oregon by reason of having to be driven through infected territory before reaching the reserve. But this would be an exposure after dipping, and the requirement under rule 2 of the board of inspectors would all come to naught, as subsequent exposure would subject sheep to infection whether they had been treated or not. Here, therefore, is a case where sheep, perfectly healthy, being driven from localities not infected in any way and through uninfected territory are about to enter the state. Why should the expense and burden be imposed upon their owners of twice dipping and a quarantine of from eight to fourteen days, or more, especially as the sheep are to be dipped under the inspection of the government officers prior to being started upon their journey?

A further important feature attending the controversy is that the country, at all feasible places for driving complainants' sheep into Oregon and thence to and upon the reserve, is either devoted exclusively to fruit and garden farming or consists of desert, and that the inconvenience and expense of providing adequate feed and of quarantining on the way for any length of time would be very great, and any delay of the kind would be attended with heavy losses to the flocks. These facts, thus stated in a general way, are not only alleged in the bill of complaint, but are amply supported by the evidence of persons acquainted with the intervening territory, and are not controverted in any way except by general denial in the answer. It is also alleged that the defendants threaten quarantine within this intervening territory.

Now, it is manifest from this showing that a very great injury and injustice will be visited upon the complainants if they are to be required to submit to the provisions of rule 2 of the Oregon state board of sheep commissioners. The rule, however, being unreasonable, it is not within the authority of the sheep inspector or his deputy to enforce it. While the law, aside from the rule, requires the flock owners to give notice on entering the state, and upon receipt of such notice requires the inspector or his deputies to make an inspection and to take measures accordingly under it, it appears that these officers threaten to require quarantine in territory that will not reasonably and practically admit of it. The distance between the crossing into the state and the reserve is but 18 miles, and no harm can come from the sheep being driven upon such reserve without quarantine, it being established that they are now, and will be when driven into the state, in perfect health. A temporary restraining order will therefore issue enjoining the defendants from requiring complainants to dip the sheep in question prior to their reaching the Wenaha reserve, or from quarantining them on the way or in any manner interfering with them while in transit.

I do not intend by this holding to relieve or relax anything of the duty imposed upon the complainants by the Oregon law in bringing their sheep into the state and in pasturing them here. They are bound to give their notice on entering the state and if a fair and honest inspec-

tion should disclose that their sheep or any portion of them are diseased or infected they must submit to the requirements of the law for eradicating the evil. But under the present exigency, as establishd by the record, they will be permitted to drive their sheep through the intervening territory without dipping or quarantining, against the threatened interference on the part of defendants. If, however, the sheep are to pass through exposed territory, it is only proper that they should be dealt with as sheep locally or within the state are to be dealt with under the law.

The order will require of the complainants that they cause their sheep to be dipped within 10 days before entering the state, under the supervision of a federal inspector, as it appears that one can be had. This will be an equivalent of the requirement of the Oregon law that all sheep within the state shall be dipped in the year 1907, whether infected with disease or not.

Let the order issue as indicated.