(February 17, 1904.)

## IN RE KINYON.

[75 Pac. 268.]

INTERSTATE COMMERCE—LICENSE TAX ON SOLICITORS—RESTRAINT OF TRADE AND COMMERCE.

1. A law requiring solicitors taking orders for goods and merchandise to obtain a license and pay a tax therefor is in violation of the third clause of section 8, article 1 of the constitution of the United States, when applied to persons acting as agents and solicitors for citizens of other states in the sale of property not at the time within this state.

2. A manufacturer of goods who carries on his business of manufacturing in another state may send his agents into this state to solicit orders for the products of his manufactory without paying to the state a license tax therefor, and he is protected in so doing by the federal constitution.

3. Act of March 16, 1901, providing for licensing of peddlers, hawkers and solicitors taking orders for goods, is unconstitutional, and an unwarranted interference with interstate commerce, in so far as it attempts to impose such burden upon the authorized solicitors and agents of citizens of other states trying to introduce and sell their goods in this state.

4. Where the property, prior to the sale, has been transported to this state, and becomes subject to the jurisdiction thereof, a contract concerning the same does not look to interstate transportation for its consummation, and is subject to state regulations and control.

(Syllabus by the court.)

ORIGINAL petition by Irven Kinyon for a writ of *habeas corpus*. By consent, writ waived and petitioner discharged.

Forney & Moore, for Petitioner.

This case involves the constitutionality of the act of March 16, 1901, Sixth Session Laws of Idaho, page 159, to provide for the licensing of peddlers, hawkers and solicitors, and prescribing penalty for failure to comply with the provisions of this act. Section 8 of this act provides that the same shall not be construed to apply to runners traveling for wholesale houses

and taking orders for merchants only, nor to peddlers or hawkers in farm products. The applicant for this writ was convicted of the violation of this act in selling stoves and ranges manufactured in the state of Missouri. It is contended on the, part of the petitioner that this act is in violation of the federal constitution, in that it is a regulation of commerce, control over which is by the supreme law of the land vested in Congress. It is further contended that a sale, by sample or otherwise, of goods not yet brought into the state, and owned by a nonresident, cannot be subject to a state tax or license fee, as that would constitute a regulation of interstate commerce. (*Stockard v. Morgan,* 185 U. S. 27, 22 Sup. Ct. Rep. 576, 46 L. ed. 785, also see exhaustive note in which all of the recent cases are decided; *Caldwell v. North Carolina,* 187 U. S. 622, 23 Sup. Ct. Rep. 229, 47 L. ed. 336; *Norfolk & Western Ry. Co. v. Sims,* 191 U. S. 441, 24 Sup. Ct. Rep. 151, 48 L. ed. 254; *State v. Hickox,* 64 Kan. 650, 68 Pac. 35; *Ex parte Hough,* 69 Fed. 330; *Ex parte Thomas,* 71 Cal. 204, 12 Pac. 53.) It is further contended that section 8 of the act hereinbefore referred to is repugnant to section 5 of article 8 of the constitution of Idaho. (*French v. Teschemaker,* 24 Cal. 518; *People v. Judge,* 17 Cal. 547.)

John A. Bagley, Attorney General, and W. E. Stillinger, for the State, file no brief.

AILSHIE, J.—The petitioner has made an original application in this court for a writ of *habeas corpus,* and alleges that he is illegally and wrongfully imprisoned and detained under a charge of soliciting orders within this state for wrought iron ranges, manufactured by the Wrought Iron Range Company of St. Louis, Missouri, to be shipped into this state under such orders and contracts. It appears that the petitioner, a resident of the state of Washington, was soliciting orders from a price list and by sample carried with him by horse and cart, and that he had no interest in the goods for which he was soliciting orders, but that the same are manufactured and kept in the state of Missouri, and that upon the forwarding of such orders the goods are thereupon shipped to the agent for deliv-

ery. No license was ever secured for this purpose as required by act of March 16, 1901 (Sess. Laws 1901, p. 555), and the petitioner was accordingly arrested for a violation of that act, in that he solicited orders without first procuring a license as required by law. The provisions of the act involved in this case are as follows:

"Section 4. License. Each peddler or solicitor taking orders for groceries, clothing, hardware, or other mercantile establishments shall pay a license of not less than seventy-five ($75) dollars, nor more than one hundred and twenty-five ($125) dollars per year."

"Section 8. Applicable when. The provisions of this act shall not be considered to apply to runners traveling for wholesale houses and taking orders from merchants only, nor to peddlers or hawkers in farm products."

Section 9 of the act makes its violation a misdemeanor and punishable by fine or imprisonment in case of failure to pay such fine.

The prisoner was tried and convicted in the justice's court in and for Latah county, and a fine was thereupon imposed, and on failure to pay the same he was committed to the custody of the sheriff of Latah county. Upon the trial in the justice's court the prosecuting attorney for Latah county and the attorneys for the prisoner entered into an agreed statement of facts which purports to embody all the material facts in the case, and is as follows:

"The Wrought Iron Range Company is a corporation duly organized and existing under the laws of the state of Missouri and are manufacturers and wholesale dealers in stoves and ranges in the city of St. Louis, in the said state of Missouri, and with no place of business in the state of Idaho.

"That the defendant herein is the duly authorized soliciting agent of the said Wrought Iron Range Company, for the sale of stoves and ranges in the state of Idaho, and that, as such agent and solicitor, the defendant herein has engaged in the business of selling and offering to sell, stoves and ranges in the said state of Idaho, by sample and by list; that on the second day of February, A. D. 1904, the defendant, as such

agent, solicitor and representative of the said Wrought Iron Range Company, sold, by sample and by list, a certain stove and range of the said Wrought Iron Range Company to one E. C. Lloyd, in said county of Latah, state of Idaho.

"That neither the defendant nor the said Wrought Iron Range Company paid any tax or procured a license from the county auditor of Latah county before engaging in said business, and making said sale, as required by the act of March 16, 1901, Sixth Session Laws, page 155.

"That prior to the commencement of this action, the board of county commissioners of Latah county fixed the license under the act hereinbefore referred to as follows: Peddler or hawker, on foot, $25 per year; peddler or hawker, with wagon, $50 per year; peddler or solicitor taking orders for groceries, clothing, hardware or other merchandise, $100 per year."

By agreement of the respective counsel for the petitioner and the state, two questions have been submitted to the court as the leading and controlling questions which determine the issue as to whether or not the petitioner is entitled to his discharge. They are: "1. Is the act of March 16, 1901, Sixth Session Laws, page 155, providing for the licensing of peddlers, hawkers and solicitors in contravention of section 8, article 1 of the constitution of the United States? 2. Is section 8 of the said act of March 16, 1901, unconstitutional and void in this: that it is not uniform and discriminates unjustly against this defendant?"

The controlling question in this case is: Does the act of March 16, 1901, conflict with section 8, article 1 of the federal constitution, in that it affects or interferes with interstate commerce? It appears to us that this act in no way interferes with the interstate commerce provisions of the constitution, unless it be in so far as it has the effect of imposing a license tax upon agents or solicitors who obtain orders within this state for goods manufactured and owned by citizens of other states. This question has been so repeatedly discussed and passed upon by the supreme court of the United States that any discussion thereof by us is entirely obviated, and we will therefore content ourselves with a review of some of the leading authorities from

that court in order that we may arrive at their ultimate conclusion in the premises.

*Robbins v. Taxing District of Shelby County,* 120 U. S. 497, 7 Sup. Ct. Rep. 592, 30 L. ed. 697, is one of the leading authorities on this question, and has perhaps been cited more frequently than any other case on the particular question here involved. That was a prosecution against Robbins for drumming or soliciting orders by samples within the taxing district of Shelby county, Tennessee, for a firm doing business in Cincinnati, Ohio, without having procured a license for carrying on such business or trade as required by a statute of the state of Tennessee, imposing a license on drummers and other persons selling goods by sample or otherwise for carrying on such business or occupation. The court in discussing the purpose and object of such a statute and the power and authority of the state to enact and enforce such a law, said: "This kind of taxation is usually imposed at the instance and solicitation of domestic dealers, as a means of protecting them from foreign competition. And in many cases there may be some reason in their desire for such protection. But this shows in a still stronger light the unconstitutionality of the tax. It shows that it not only operates as a restriction upon interstate commerce, but that it is intended to have that effect as one of its principal objects. And if a state can, in this way, impose restrictions upon interstate commerce for the benefit and protection of its own citizens, we are brought back to the condition of things which existed before the adoption of the constitution, and which was one of the principal causes that led to it.

"If the selling of goods by sample and the employment of drummers for that purpose injuriously affect the local interest of the states, Congress, if applied to, will undoubtedly make such reasonable regulations as the case may demand. And Congress alone can do it; for it is obvious that such regulations should be based on a uniform system applicable to the whole country, and not left to the varied, discordant or retaliatory enactments of forty different states. The confusion into which the commerce of the country would be thrown by being subject

to state legislation on this subject, would be but a repetition of the disorder which prevailed under the Article of Confederation."

This case was cited as a controlling authority in *Asher v. State of Texas*, 128 U. S. 129, 9 Sup. Ct. Rep. 1, 32 L. ed. 368, the syllabus to which says: "The law of Texas requiring every commercial traveler or drummer to obtain a license and to pay a tax therefor is unconstitutional and void when applied to citizens of other states soliciting trade in Texas."

In *Lyng v. Michigan*, 135 U. S. 161, 166, 10 Sup. Ct. Rep. 725, 34 L. ed. 150, 153, it is observed: "We have repeatedly held that no state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress."

Again, in *McCall v. People of the State of California*, 136 U. S. 104, 10 Sup. Ct. Rep. 881, 34 L. ed. 391, Mr. Justice Lamar reviewed the previous authorities on the question and approved the doctrine announced in the principal cases.

In *Brennen v. City of Titusville*, 153 U. S. 289, 14 Sup. Ct. Rep. 829, 38 L. ed. 719, the plaintiff in error was convicted of a violation of an ordinance of the city of Titusville, Pennsylvania, requiring all persons canvassing or soliciting orders for any goods within the city to first obtain a license therefor. Mr. Justice Brewer there reviewed the authorities again on the question and said: "It is clear, therefore, that this license tax is not a mere police regulation, simply inconveniencing one engaged in interstate commerce, and so only indirectly affecting the business, but is a direct charge and burden upon that business; and if a state may lawfully exact it, it may increase the amount of the exaction until all interstate commerce in this mode ceases to be possible. And notwithstanding the fact that the regulation of interstate commerce is committed by the constitution to the United States, the state is enabled to say

that it shall not be carried on in this way, and to that extent to regulate it."

In 1902 this same question again came before the supreme court of the United States, in *Stockard v. Morgan,* 185 U. S. 27, 22 Sup. Ct. Rep. 576, 46 L. ed. 785, upon a writ of error to the supreme court of Tennessee, and the authorities were there reviewed by Mr. Justice Peckham, and special stress was laid upon the Robbins and Brennen cases, *supra,* and the writer of the opinion concludes as follows: "Although the state has general power to tax individuals and property within its jurisdiction, yet it has no power to tax interstate commerce, even in the person of a resident of the state. We regard this case as within the Robbins and other similar cases above referred to, and it follows that the judgment of the supreme court of Tennessee, holding the complainants liable to pay the tax demanded, was erroneous."

There is an interesting and exhaustive note to this last cited case in book 46, page 785, L. ed., of Supreme Court Reports, where the numerous authorities both from the federal and the state courts are collated and digested, and while there appears to be much diversity of opinion among the several state courts, there is a uniformity of decision in the federal courts on this question.

The Robbins, Asher, Lyng, Brennen and Stockard cases are referred to and approved by Mr. Justice Shiras in *Caldwell v. North Carolina,* 187 U. S. 622, 23 Sup. Ct. Rep. 229, 47 L. ed. 336.

*Norfolk & Western Ry. Co. v. Sims,* 191 U. S. 441, 24 Sup. Ct. Rep. 151, 48 L. ed. 254, decided by the United States supreme court in December, 1903, seems to be the last expression of that court upon this subject, and there again all the principal cases are cited with approval.

The only question with us is to ascertain whether or not the Idaho statute above cited falls within the rule and principle announced in this long and uniform line of authorities. It is conceded that the petitioner was not the owner of the goods for which he was soliciting orders, and that such goods were at the time the manufacture and property of a citizen of an-

other state—that is to say, the property of the Wrought Iron Range Company—and that he was exhibiting a sample and taking orders for property to be shipped into this state. We think this case, as here presented, falls clearly within the rule announced by the highest judicial authority in the land, and that as there construed our statute has the effect of attempting to regulate or interfere with interstate commerce, and in that respect is in violation of the third clause of section 8, article 1 of the constitution of the United States.

It should be observed, however, that a distinction has been made where the goods or property at the time of the sale are within the state and under the control and care of the agent or solicitor. In such cases it is said that both property and the business or occupation are within the jurisdiction of the state, and therefore subject to its regulation and control, and that any transaction with reference thereto does not look to interstate commerce for the carrying out and execution of the same. This principle was announced and distinction made in *Emert v. State of Missouri,* 156 U. S. 296, 15 Sup. Ct. Rep. 367, 39 L. ed. 430, where Mr. Justice Gray says: "The defendant's occupation was offering for sale and selling sewing-machines, by going from place to place in the state of Missouri, in a wagon, without a license. There is nothing in the case to show that he ever offered for sale any machine that he did not have with him at the time. His dealings were neither accompanied nor followed by any transfer of goods, or of any order for their transfer, from one state to another, and were neither interstate commerce in themselves nor were they in any way directly connected with such commerce. The only business or commerce in which he was engaged was internal and domestic; and, so far as appears, the only goods in which he was dealing had become part of the mass of property within the state. Both the occupation and the goods, therefore, were subject to the taxing power, and to the police power, of the state. . . . . The necessary conclusion, upon authority, as well as upon principle, is that the statute of Missouri, now in question, is no-wise repugnant to the power of Congress to regulate commerce

among the several states, but is a valid exercise of the power of the state over persons and business within its borders."

This distinction seems to have worried the state courts more than any other one thing arising out of such legislation. Much confusion and uncertainty exists among the courts of last resort of the several states as to just when such state legislation ceases to be a valid and improper exercise of the authority of the state and becomes obnoxious to the federal constitution and power of Congress to regulate commerce among the states. This feeling of uncertainty has been very forcibly expressed by Judge Elliott of the supreme court of Indiana in *McLaughlin v. City of South Bend,* 126 Ind. 471, where he says: "The current of opinion in the federal courts runs far in the direction of the utter annihilation of state power in matters bearing upon commence between the states, and, although there may be some police power remaining in the states, enabling them to legislate concerning matters of interstate commerce, its nature is very shadowy, and its extent narrowly circumscribed."

We have no desire or inclination to run counter to the principles and authority announced by the supreme judicial authority of this country vested with paramount jurisdiction in the interpretation and construction of the fundamental law of the land. Being thus convinced that the statute here in question falls clearly within the rule announced, and that the petitioner has been unlawfully restrained of his liberty, we must order his discharge.

It is therefore ordered that the petitioner be released from custody and restored to his liberty.

Sullivan, C. J., and Stockslager, J., concur.