(December 28, 1909.)

## STATE, Respondent, v. THE BUTTERFIELD LIVE-STOCK COMPANY, LTD., a Corporation, Appellant.

### [106 Pac. 455.]

CONSTITUTIONAL LAW—INTERSTATE COMMERCE—INSPECTION LAWS—LICENSE FEE—TAXATION—DISCRIMINATION AGAINST PROPERTY OF ANOTHER STATE.

1. The federal constitution reserves to the states the power to pass inspection laws and to lay imposts and duties upon imports or exports necessary for executing and carrying into effect such inspection laws.

2. A state, however, cannot, under the guise of exercising its police power, enact inspection laws which burden foreign or interstate commerce or impose upon property or products brought into a state from another state burdens or taxes more onerous than are imposed upon like property or products of the state enacting such legislation.

3. A statute with the title, "An act to provide for the payment of a grazing license fee on sheep entering the state of Idaho from other states and territories, and providing a. penalty for the violation thereof," which in the body of the act requires all persons, who bring or cause to be brought sheep from any other state or territory within the state of Idaho, to pay a grazing fee of five cents per head, is not an inspection law but is a discriminatory tax against property of another state, and an undue interference with interstate commerce and is unconstitutional and void.

4. Such statute cannot be construed into an inspection law by reason of the fact that the fund realized from the payment of the grazing fee is paid into the livestock sanitary fund, out of which the expenses and costs are paid for the enforcement of the laws of the state regulating the sanitary and healthful condition of livestock, where no like fee is required to be paid upon livestock produced within the state and no inspection required under the provisions of said act, or any duty imposed upon those whose duty it is to enforce the livestock laws of the state.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Washington County.   Hon. Ed L. Bryan, Judge.

An action to recover the grazing license fee upon sheep brought into the state from another state. Judgment for plaintiff. Defendant appeals. *Reversed.*

Frank Harris, for Appellant.

"When the subject is national and admits of only one plan of regulation, the power of Congress is exclusive, and no part can be exercised by the states, as is the regulation of foreign commerce and commerce among the states; in such cases the states cannot interfere by additional or auxiliary legislation." (Desty's Fed. Const. (1887), p. 70; note to *Gloucester Ferry Co. v. Pennsylvania*, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. ed. 158, and cases there cited; *Phila. & M. S. S. Co. v. Pennsylvania*, 122 U. S. 348, 7 Sup. Ct. 1118, 30 L. ed. 1200; *State v. Duckworth*, 5 Ida. 642, 95 Am. St. 199, 51 Pac. 456, 39 L. R. A. 365.)

"A state may lay a tax on imports to pay for services performed in inspecting the articles, if passed in good faith and not for the object of raising revenue." (Desty's Fed. Const., *supra*, p. 189.)

If the act in question were intended as an inspection law, the amount of tax that could be imposed could not exceed the amount "absolutely necessary for executing such law." (*Passenger Cases*, 7 How. 401, 12 L. ed. 751; *State v. S. S. Constitution*, 42 Cal. 587, 10 Am. Rep. 303.)

"The federal constitution forbids the several states to discriminate in any way against the persons or property of other states or against the use of the products of other states, even after they have become incorporated with the mass of property of the state, or against the sale within the state, either by requiring a license for the sale on more onerous terms and requirements than are imposed on domestic products, or in other ways, or against persons." (7 Cyc. 423, and notes; *Guy v. Baltimore*, 100 U. S. 434-439, 25 L. ed. 743; *Minnesota v. Barber*, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. ed. 455; *Peete v. Morgan*, 19 Wall. 581, 22 L. ed. 201; *Welton v. Missouri*, 91 U. S. 275, 23 L. ed. 347; *Henderson v. Wickham*, 92 U. S. 259, 23 L. ed. 543; *Foster v. Master, etc.*, 94 U. S.

246,.24 L. ed. 122; *Leisy v. Harden,* 135 U. S. 100, 10 Sup. Ct. 681, 34 L. ed. 128; *Harmon v. City of Chicago,* 147 U. S. 396, 13 Sup. Ct. 306, 37 L. ed. 216; *Bridge Co. v. Kentucky,* 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. ed. 962; *Austin v. Tenn.,* 179 U. S. 343, 21 Sup. Ct. 132, 45 L. ed. 224; *McNeill v. So. R. Co.,* 202 U. S. 544, 26 Sup. Ct. 722, 50 L. ed. 1142; *Farris v. Henderson,* 1 Okl. 384, 33 Pac. 380; *Carson River L. Co. v. Patterson,* 33 Cal. 334; *People v. Raymond,* 34 Cal. 492; *Sipe v. Murphy,* 49 Ohio St. 536, 31 N. E. 884, 17 L. R. A., N. S., 184; see notes on *Gibbons v. Ogden,* Rose's Notes on U. S. Rep. 213, 242.)

Richards & Haga, and J. L. Richards, for Respondent.

By reference to such sections of the Revised Codes as sec. 1153, providing for a sanitary board; sec. 1158, providing for state veterinary surgeon and livestock inspector; sec. 1176, providing for treatment of diseased animals; sec. 1184, providing restriction and importation of livestock; sec. 1188, providing for inspection of sheep; sec. 1255, providing for a record of slaughtered cattle; sec. 1258, providing for auctioneer's record; and the law of 1909, providing for notice of intended bringing of sheep into the state, from whence they came, etc., it will be seen that to arrive at the intent and purpose of the legislature and to determine whether any of these provisions violate the fundamental or constitutional law, national or state, they should be construed together. (*Noble v. Bragaw,* 12 Ida. 275, 85 Pac. 903; *Territory v. R. Co.,* 12 N. M. 425, 78 Pac. 74; *United States v. Freeman,* 3 How. 566, 11 L. ed. 724.)

"The terms 'imports' and 'exports' apply only to articles imported from foreign countries or exported to them. The inhibition imposed is the laying of duties on imports from foreign countries and not on such as came from one state to another." (*Patapsco Guano Co. v. Board of Agr.,* 171 U. S. 348, 18 Sup. Ct. 862, 43 L. ed. 193; *Pittsburg & S. Coal Co. v. Louisiana,* 156 U. S. 600, 15 Sup. Ct. 459, 39 L. ed. 549; *New Mexico v. Denver & R. G. Co.,* 203 U. S. 49, 27 Sup. Ct. 1, 51 L. ed. 86; *Woodruff v. Parham,* 8 Wall. (U. S.) 123,

19 L. ed. 384; *Am. Steel & W. Co. v. Speed,* 192 U. S. 500, 24 Sup. Ct. 365, 48 L. ed. 546.)

"A state may make valid enactments in the exercise of its legislative power to promote the welfare and convenience of its citizens, although in their operation they may have an effect upon interstate commerce." (8 Fed. Stat. Ann. 393; *Penn. R. Co. v. Hughes,* 191 U. S. 488, 24 Sup. Ct. 132, 48 L. ed. 272; *In re Lebolt,* 77 Fed. 588; *Kohn v. Melcher,* 29 Fed. 435; *Sherlock v. Alling,* 93 U. S. 103, 23 L. ed. 819; *Austin v. Tennessee,* 179 U. S. 349, 21 Sup. Ct. 132, 45 L. ed. 224.)

If the fee allowed in this case by the state law is to be regarded as in effect an impost or duty on imports or exports, still if the law is really an inspection law, the duty must stand until Congress shall see fit to alter it. The federal power cannot interfere with it on account of supposed excessiveness of fees. (*Neilson v. Garza,* 2 Woods, 287, Fed. Cas. No. 10,091; *Patapsco Guano Co. v. Board of Agr., supra; Turner v. Maryland,* 107 U. S. 38, 2 Sup. Ct. 44, 27 L. ed. 370; *Missouri K. & T. R. Co. v. Haber,* 169 U. S. 626, 18 Sup. Ct. 488, 42 L. ed. 883.)

Where there is no denial of any rights and privileges to citizens of other states which are accorded to citizens of Idaho, the law does not violate these constitutional provisions. (*Kimmish v. Ball,* 129 U. S. 217, 9 Sup. Ct. 277, 32 L. ed. 697; *State v. Rasmussen,* 7 Ida. 9, 97 Am. St. 234, 59 Pac. 933, 52 L. R. A. 78; *Rasmussen v. Idaho,* 181 U. S. 198, 21 Sup. Ct. 594, 45 L. ed. 820.)

Taxes in the ordinary sense does not refer to a charge merely incidental to the exercise of police power. (*City of Oil City v. Oil City L. Co.,* 151 Pa. 454, 31 Am. St. 770, 25 Atl. 124.)

Neither does a tax in the ordinary sense refer to duties on imports. (*United States v. Fifty-Nine Dem.,* 39 Fed. 402; *Territory v. R. Co.,* 12 N. M. 425, 78 Pac. 75.) The constitutional provision of this state in regard to equality and uniformity has reference solely to taxation, and does not apply to impositions made under police power of the state. (*State*

*v. Doherty,* 3 Ida. 384, 29 Pac. 855; *State v. Union Cent. L. Ins. Co.,* 8 Ida. 240, 67 Pac. 647; *Wright v. Stinson,* 16 Wash. 368, 47 Pac. 761; *Kelley v. Rhoades,* 7 Wyo. 237, 75 Am. St. 904, 51 Pac. 593, 39 L. R. A. 594.)

STEWART, J.—This action was brought by the state, respondent, against the defendant, appellant, to recover the sum of $265, alleged to be due under the provisions of an act approved March 11, 1909 (Laws of 1909, p. 72), as follows:

"An act to provide for the payment of a grazing license fee on sheep entering the state of Idaho from other states and territories, and providing a penalty for the violation thereof.

"Sec. 1. Any person, company or corporation attempting to bring, or causing to be brought, from any other State or Territory any sheep into the State of Idaho in any manner, except by shipping the same through the State by railroad train, shall, before crossing the State line, notify the State Live Stock Inspector of the district to be entered or the State Veterinary Surgeon, of such proposed action, which notice shall set forth the number of sheep, the brand thereon, the locality from which such sheep came and through which they have been driven, and accompanying such notice with a grazing fee equal to the sum of five cents (5c) per head for the total number of sheep embraced within said notice. All fees so collected shall be placed in the State Treasury to the credit of the State Live Stock Sanitary Fund.

"Sec. 2. Any person, company or corporation violating the provisions of this Act shall, upon conviction thereof, be fined in a sum not less than one hundred ($100) nor more than fifteen hundred dollars ($1500.00) together with the costs of prosecution."

A demurrer was filed to the complaint in the lower court upon the following grounds: First, that the complaint fails to set forth facts sufficient to constitute a cause of action; second, that the court has not jurisdiction of the subject matter of the action; third, that the act of March 11, 1909, upon which the action is founded, is unconstitutional and void, for the reason that it conflicts with secs. 8 and 10 of art. 1,

and sec. 2 of art. 4 of the federal constitution, and sec. 5, art. 7 of the constitution of the state of Idaho. The demurrer was overruled by the trial court and the defendant declined to plead further; whereupon, judgment was entered as prayed for in the complaint. From this judgment the defendant appeals.

The contention of the appellant is that it cannot be taxed under the provisions of the act involved in this case, because, first, such taxation is an interference with interstate commerce and therefore violates art. 1, sec. 8, of the federal constitution, which provides that the Congress shall have power "to regulate commerce . . . . among the several states"; second, such taxation is an impost on imports and therefore violates art. 1, sec. 10, of the constitution, which provides among other things: "No state shall, without the consent of the Congress, lay any imposts or duties on imports . . . . except what may be absolutely necessary for executing its inspection laws"; third, such taxation infringes upon the rights of citizens of other states and therefore violates art. 4, sec. 2, of the constitution, which provides that "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states"; and fourth, that such act violates sec. 5, art. 7 of the constitution of Idaho, which provides, "All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal."

It has been held by the supreme court of the United States since the decision in *Gibbons v. Ogden,* 9 Wheat. 1, 6 L. ed. 23, down to the present time that the federal constitution reserves to the states the power to pass inspection laws and to lay imposts and duties on imports or exports necessary for executing and carrying into effect such inspection laws. (*Gibbons v. Ogden, supra; State v. Duckworth,* 5 Ida. 642, 95 Am. St. 199, 51 Pac. 456, 39 L. R. A. 365; *In re Kinyon,* 9 Ida. 642, 75 Pac. 268; *Turner v. Maryland,* 107 U. S. 38, 2 Sup. Ct. 44, 27 L. ed. 370; *Brimmer v. Rebman,* 138 U. S. 78, 11

Sup. Ct. 213, 34 L. ed. 862; *Voight v. Wright,* 141 U. S. 62, 11 Sup. Ct. 855, 35 L. ed. 638; *Penn. R. Co. v. Hughes,* 191 U. S. 478, 24 Sup. Ct. 132, 48 L. ed. 268; *Vance v. Vandercook Co.,* 170 U. S. 466, 18 Sup. Ct. 674, 42 L. ed. 1111; *Patapsco Guano Co. v. Board of Agr.,* 171 U. S. 345, 18 Sup. Ct. 862, 43 L. ed. 191, 52 Fed. 690; *Georgia Packing Co. v. Mayor etc.,* 60 Fed. 774, 22 L. R. A. 775; *Vines v. State,* 67 Ala. 73; *Powell v. State,* 69 Ala. 10; *Addison v. Saulnier,* 19 Cal. 82.)

We think that it is also settled by the same line of authorities and others that a state cannot, under the guise of exercising its police power, enact inspection laws which burden foreign or interstate commerce or impose upon property or products, brought into a state from another state, burdens or taxes more onerous than are imposed upon like property or products of the state enacting such legislation. (*In re Kinyon,* 9 Ida. 642, 95 Am. St. 199, 51 Pac. 456, 39 L. R. A. 365; 7 Cyc. 423; *Guy v. Baltimore,* 100 U. S. 434, 25 L. ed. 743; *Walling v. Michigan,* 116 U. S. 446, 6 Sup. Ct. 454, 29 L. ed. 691; *Schollenberger v. Pennsylvania,* 171 U. S. 1, 18 Sup. Ct. 757, 43 L. ed. 49; *Austin v. Tennessee,* 179 U. S. 343, 21 Sup. Ct. 132, 45 L. ed. 224.)

The question then arises in this case, whether the act under consideration imposes a burden upon interstate commerce by levying a tax which discriminates against property brought into the state from another state, or whether the act under consideration can be held to be an inspection law, enacted for the purpose of suppression and prevention of disease among sheep and livestock of the state and to protect the health of such livestock.

The objects and purposes of the act under consideration, as disclosed by the title, are "to provide for the payment of a grazing license fee on sheep entering the state of Idaho from other states and territories and providing a penalty for the violation thereof." In other words, it is an act as disclosed by the title to require persons who bring sheep into this state to pay a grazing fee. The title does not provide that a grazing fee shall be paid generally by persons grazing sheep within

the state, but shall only be paid upon sheep entering the state from other states and territories; and an examination of the body of the act discloses that its terms are in accordance with the title; that is, all persons who bring or cause to be brought sheep from any other state or territory are required to notify the state livestock inspector and set forth in such application the number of sheep, the brand, locality from which such sheep came and through which they have been driven, and accompany such notice with a grazing fee equal to the sum of five cents per head for the total number of sheep brought within said state. Thus the terms of the act are made to apply only to persons who bring sheep into the state from other states and territories.

It will thus be seen that under the provisions of this act, it discriminates in favor of sheep produced within the state, and only requires the payment of a grazing fee upon those brought into the state. Counsel for respondent, however, contends that the effect of this statute is to provide for and promote the health, safety and well-being of the livestock of the state; and that this is true by reason of the fact that the grazing fee thus provided for is required to be paid into the state livestock sanitary fund, which is the fund out of which the expenses and costs are paid in the enforcement of the laws of the state regulating the sanitary and healthful condition of the livestock of the state. It will be observed from an examination of this statute that nothing whatever is said with reference to the inspection of the sheep brought into the state and upon which the grazing fee is required to be paid. No duty whatever is imposed upon the state veterinary surgeon with reference to an examination or inspection of such sheep. No requirement is exacted that the sheep shall be healthy before they are admitted into the state, or the grazing fee accepted. No reference or provisions are to be found in the act which in any way indicate that the grazing fee required to be paid is for the purpose of inspecting the sheep after they arrive in the state, or that the charge is reasonable or for the purpose of compensating the officers for any duty required to be performed by them under any of the laws of the state.

We also find that, under the provisions of sec. 1185 of the Rev. Codes, "Any person, persons, company, corporation or association, or any agent or employee of any person, persons, company, corporation or association, who shall drive or herd, or cause to be driven or herded, or shall bring or cause to be brought, into the state of Idaho from any other state, any sheep, shall immediately, upon crossing the state line of Idaho, notify the livestock inspector of the county or district where said sheep crossed the state line, and before he shall proceed further than two miles from said state line into the state of Idaho he shall make an application in writing to such livestock inspector for the inspection of said sheep. . . . . Any. inspector on receiving such notice shall at once proceed to inspect the sheep as set forth in the application."

This statute is clearly and purely an inspection statute which provides for the inspection of sheep brought into the state from any other state or territory, and prescribes the duties of the person bringing such sheep in and the duties of the inspector with reference to the same. If the act involved in this case operates as an inspection law, then we have two provisions of the statute which provide for the inspection of sheep brought into the state. But it will be observed that both of these statutes relate to sheep brought into the state from another state, the former requiring a grazing fee to be paid and the latter requiring that such sheep shall be inspected; and a comparison of these two statutes, it seems to us, clearly indicates that in enacting the statute providing for a grazing fee the legislature did not intend it to operate as an inspection law but as a tax pure and simple, levied upon sheep brought from a foreign state into the state of Idaho and levied in discrimination against the products of other states. The statute further provides generally for the inspection of livestock in each district, and if the theory of respondent be correct, sheep brought into the state from another state are required to pay a grazing fee and thereafter be subject to both special and general inspection under the provisions of the statute. We find that under the provisions of sec. 1205 of the Rev. Codes, "The boards of county commis-

sioners of the several counties of this state, at the time of the annual levy of taxes, must levy a special tax of . . . . three mills on the dollar of the assessed valuation of all sheep within their respective counties. Such tax shall be collected in the same manner and at the same time as other taxes, and paid over to the state treasurer at the same time that other taxes are remitted, to be placed in, and to constitute a fund to be known as, the livestock sanitary fund, to be used in the payment of the salaries and expenses of the officers provided for in this chapter, except the salary of the state veterinary surgeon, which shall be paid as hereinbefore provided.''

Under the provisions of this statute, the person bringing sheep within the state, prior to the annual levy and having such sheep within the state at the time of such levy, is required to pay the tax thus provided for to be paid into and in support of the livestock sanitary fund, and thereby contributes to the livestock sanitary fund the same tax and assessments as are made against sheep produced within the state; and under the provisions of the act involved in this case, in addition thereto he is required to pay the grazing fee of five cents per head to the same fund for the same purposes as that for which the special tax levy is made. This grazing fee, whether or not it be used for the purpose of promoting the health and welfare of the stock within the state, is a fee that is exacted only from those bringing sheep within the state from another state, and not based upon the benefits arising from any duty performed by the state to the sheep brought in, in the way of inspection, or services rendered in or about the care of such sheep or the preservation of their health and general welfare.

A bare inspection of the statute, it seems to us, clearly indicates that its provisions are in the nature of a tax and not an inspection statute, and that it is levied for the purpose of discriminating against sheep brought within the state from another state. We are unable to discover any statute which in any manner provides for the payment of the same or a similar fee by the owners of sheep produced within the state. The grazing fee thus provided for is clearly in excess and in

addition to all fees, charges and assessments levied against sheep produced within the state, and is clearly a discrimination and a tax, and by reason of such discrimination is, to that extent, a burden upon interstate commerce and violates the provisions of the constitution of the United States. The mere fact that the fund realized from such assessment goes into the livestock sanitary fund and is generally used for the purpose of preserving the health and welfare of the sheep within the state, might be justified were the same requirement found in the provisions of the law applicable to sheep produced within the state, or if any duty were imposed upon the state livestock sanitary board in return for the levy of such assessment; but we find that independent of this statute, full and complete provisions are made for the inspection of all sheep brought within the state and produced within the state, and that a special levy is made for the purpose of raising a fund to meet such expenses, and that sheep brought into the state from another state are subject to these statutory provisions and contribute their proportionate share of the special levy to such sanitary fund; so, when the legislature attempted to require the payment of a grazing fee upon all sheep brought from another state into the state, they thereby added a burden not imposed upon property produced in the state, and to that extent the act contravenes the provisions of the constitution of the United States.

Under the authorities heretofore cited, we have no doubt but that the state has the power to pass an inspection law requiring that all livestock brought into the state shall be inspected, and requiring a duty to be paid for such inspection and to carry into effect such inspection law; and the legislature, having already provided for the inspection of livestock brought into the state, need only have provided for the fee or duty to be charged for such inspection, and had it been intended that the act under consideration should be treated or construed as an inspection law, the legislature no doubt would have so indicated in the act involved in this case and not provided for charging a grazing fee for all sheep brought within the state from other states and territories.

If the contention of counsel for respondent be correct, then the legislature has done indirectly what it could not have done directly. It is not within the power of the legislature to violate a plain provision of the constitution by doing the thing prohibited in an indirect and circuitous manner. It must at once be conceded that the legislature of the state could not enact a law requiring sheep brought within the state to pay a grazing fee when no such tax was imposed upon sheep produced within the state; and if such legislation is prohibited by the provisions of the constitution, it cannot be enacted under the pretense and name that the fund realized therefrom is to be paid into a sanitary fund when a like requirement is not exacted of sheep produced within the state. If the construction is given to this statute contended for by respondent, then the title of the act clearly violates art. 3, sec. 16, of the constitution of this state. This section requires, "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." The title to this act does not disclose that the subject of the act is the inspection of livestock or has anything whatever to do with the inspection of livestock or the health or welfare of the livestock of the state. The title as expressed would permit only such legislation as relates to the payment of a grazing license fee on sheep entering the state of Idaho from other states and territories and matters relating thereto, and would not authorize the incorporation in the act of provisions relating to an entirely different subject.

We are for these reasons clearly of the opinion that the act involved in this case is unconstitutional and void. The judgment of the lower court is *reversed,* and the trial court directed to sustain the demurrer. Costs awarded to *appellant.*

Sullivan, C. J., and Ailshie, J., concur.